UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 3:04-CV-30102-KPN

| | | |
|---|---|---|
| SPIRITUAL TREES d/b/a TREE SPIRIT<br>and DAVID V. DUNN<br>       Plaintiffs | )<br>)<br>)<br>) | |
| v. | )<br>) | ANSWER TO PLAINTIFFS'<br>COMPLAINT AND |
| LAMSON AND GOODNOW<br>MANUFACTURING COMPANY and<br>J. ROSS ANDERSON, JR.<br>              Defendants | )<br>)<br>)<br>)<br>) | DEMAND FOR JURY<br>TRIAL AND<br>COUNTERCLAIMS |

Defendants, Lamson and Goodnow Manufacturing Company ("Lamson and

Goodnow") and J. Ross Anderson, Jr. ("Mr. Anderson"), collectively referred to herein as

the "Defendants," answer Plaintiffs' Complaint and Demand for Jury Trial (the

"Complaint") herein as follows:

1-2.    Defendants are without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraphs 1 and 2 of the Complaint.

3-4.    Defendants admit the allegations contained in paragraphs 3 and 4 of the

Complaint.

5-10.    Defendants deny that paragraphs 5 through 10 of the Complaint contain a

full or fair summary of the document cited. Defendants deny that the document attached

as Exhibit A is a complete and accurate copy of the agreement referenced in paragraphs 5

through 10. Defendants attach as Exhibit A hereto a complete and accurate copy of the

agreement dated February 1, 2000 (the "Agreement") between Lamson and Goodnow

and Spiritual Trees, Inc. ("Spiritual Trees") and state that the Agreement speaks for itself

and is the best evidence of its contents.

11.    In response to the allegations contained in paragraph 11 of the Complaint, Defendants admit that for a short period of time following the parties' execution of the Agreement, until on or about April 1, 2000, when Lamson and Goodnow hired him as employee of the company, David V. Dunn ("Mr. Dunn") provided consulting services to Lamson and Goodnow. Defendants deny the remaining allegations contained in paragraph 11 of the Complaint.

12.    In response to the allegations contained in paragraph 12 of the Complaint, Defendants admit that on or about April 1, 2000, Lamson and Goodnow hired Mr. Dunn as an employee in the position of General Manager of Operations, and that at the time of his termination, Mr. Dunn was President of Lamson and Goodnow.

13-15.    Defendants deny the allegations contained in paragraphs 13 through 15 of the Complaint.

16.    In response to paragraph 16 of the Complaint, Defendants admit that no Lamson and Goodnow stock has ever been issued to Mr. Dunn.

17-23.    Defendants deny the allegations contained in paragraphs 17 through 23 of the Complaint.

24.    Defendants admit the allegations contained in paragraph 24 of the Complaint.

25-26.    Defendants deny the allegations contained in paragraphs 25 and 26 of the Complaint.

27.    In response to paragraph 27 of the Complaint, Defendants admit that on March 29, 2004, an individual acting on behalf of Lamson and Goodnow contacted law enforcement authorities and advised them that Mr. Dunn had removed company property

2

from Lamson and Goodnow's premises without authorization. Defendants deny the remaining allegations contained in paragraph 27 of the Complaint.

28.    Defendants state that providing any response to the allegations contained in paragraph 28 of the Complaint would require Defendants to disclose communications that are confidential and protected by the attorney-client privilege.

29.    In response to paragraph 29, Defendants admit that in response to a request for information from a representative of the Department of Employment and Training, Mr. Anderson, acting on behalf of Lamson and Goodnow, as Mr. Dunn's employer, stated that Mr. Dunn had been terminated on March 30, 2004, because he had removed company property from Lamson and Goodnow's premises without authorization. Defendants deny the remaining allegations contained in paragraph 29 of the Complaint.

30.    Defendants deny the allegations contained in paragraph and 30 of the Complaint.

31.    In response to paragraph 31 of the Complaint, Defendants admit that on or about March 29, 2004, and March 31, 2004, Mr. Dunn, either individually or on behalf of Spiritual Trees, claimed that Lamson and Goodnow owed commissions and late fees. Defendants further state, in response to paragraph 31 of the Complaint, that at no point following the parties' execution of the Agreement and before March 29, 2004, had Mr. Dunn ever claimed to Lamson and Goodnow, or its agents or representatives, that any commissions were owed. Defendants deny the remaining allegations contained in paragraph 31 of the Complaint.

3

32.    In response to paragraph 32 of the Complaint, Defendants admit that Lamson and Goodnow has not paid any commissions or late fees. Defendants deny the remaining allegations contained in paragraph 32 of the Complaint.

33.    Defendants deny the allegations contained in paragraph 33 of the Complaint.

34.    In response to the allegations contained in paragraph 34 of the Complaint, Defendants incorporate by reference their responses to each of the individual allegations contained in paragraphs 1 through 33, as set forth more specifically above.

35-37. Defendants deny that the allegations contained in paragraphs 35 through 37 of the Complaint contain a full or fair summary of the terms of the Agreement cited and state that the Agreement, a copy of which is attached as Exhibit A, speaks for itself and is the best evidence of its contents.

38-40. Defendants deny the allegations contained in paragraphs 38 through 40 of the Complaint.

41.    In response to the allegations contained in paragraph 41 of the Complaint, Defendants incorporate by reference their responses to each of the individual allegations contained in paragraphs 1 through 40, as set forth more specifically above.

42-44. Defendants deny the allegations contained in paragraphs 42 through 44 of the Complaint.

45.    In response to the allegations contained in paragraph 45 of the Complaint, Defendants incorporate by reference their responses to each of the individual allegations contained in paragraphs 1 through 44, as set forth more specifically above.

4

46.     Defendants deny that the allegations contained in paragraph 46 of the Complaint contain a full or accurate characterization of the Agreement cited and state that the Agreement, a copy of which is attached as Exhibit A, speaks for itself and is the best evidence of its contents.

47.     Defendants admit the allegations contained in paragraph 47 of the Complaint.

48.     Defendants deny the allegations contained in paragraph 48 of the Complaint.

49.     In response to the allegations contained in paragraph 49 of the Complaint, Defendants incorporate by reference their responses to each of the individual allegations contained in paragraphs 1 through 48, as set forth more specifically above.

50-53.  Defendants deny the allegations contained in paragraphs 50 through 53 of the Complaint.

54.     In response to the allegations contained in paragraph 54 of the Complaint, Defendants incorporate by reference their responses to each of the individual allegations contained in paragraphs 1 through 53, as set forth more specifically above.

55-57.  Defendants deny the allegations contained in paragraphs 55 through 57 of the Complaint.

58.     In response to the allegations contained in paragraph 58 of the Complaint, Defendants incorporate by reference their responses to each of the individual allegations contained in paragraphs 1 through 57, as set forth more specifically above.

59-61.  Defendants deny the allegations contained in paragraphs 59 through 61 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

The Complaint, and each and every count therein, fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs lack standing to bring some or all of the claims asserted in the Complaint.

## FOURTH AFFIRMATIVE DEFENSE

Some or all of the claims in the Complaint are barred in whole or in part by the doctrines of waiver, estoppel, and laches.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by their unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

Defendants have, at all times, acted reasonably, in good faith, and consistent with sound business judgment.

## SEVENTH AFFIRMATIVE DEFENSE

Any information disseminated by the Defendants is not defamatory.

## EIGHTH AFFIRMATIVE DEFENSE

Any information disseminated by the Defendants is true.

## NINTH AFFIRMATIVE DEFENSE

In disseminating any information about Mr. Dunn, the Defendants were engaged in fulfilling a legitimate business purpose and protected by their conditional privilege as Mr. Dunn's employers, and any dissemination of such information by Defendants was not excessive.

## COUNTERCLAIMS

Defendants and Plaintiffs-in-Counterclaim Lamson and Goodnow Manufacturing Company ("Lamson and Goodnow") and J. Ross Anderson (Mr. Anderson") allege as counterclaims herein against Plaintiffs and Defendants-in-Counterclaim David V. Dunn ("Mr. Dunn") and Spiritual Trees, Inc. ("Spiritual Trees") the following.

## PRELIMINARY STATEMENT

1.    Lamson and Goodnow is a Massachusetts corporation in the business of manufacturing cutlery and kitchen tools. By an agreement dated February 1, 2000 (the "Agreement"), Lamson and Goodnow acquired certain assets of Spiritual Trees, a Vermont corporation owned by Mr. Dunn, that was then in the business of selling wooden cutting boards and kitchen utensils. The Agreement provided, among other things, that Lamson and Goodnow would pay certain commissions for a period of twenty-four (24) months.

2.    Approximately two months after the parties' execution of the Agreement, Lamson and Goodnow hired Mr. Dunn as an employee. Acting individually and as the principal and sole owner of Spiritual Trees, on behalf of Spiritual Trees, and as a condition of his employment, Mr. Dunn agreed that Lamson and Goodnow had no obligation to pay any commissions under the Agreement, and Mr. Dunn represented to

7

Lamson and Goodnow, individually and on behalf of Spiritual Trees, that he waived all such commissions. Lamson and Goodnow in hiring Mr. Dunn relied on Mr. Dunn's promises and representations.

3.      In or about March 29, 2004, Mr. Dunn reneged on his earlier promises and representations and claimed that Lamson and Goodnow owed commissions well in excess of those commissions that Mr. Dunn expressly had waived.

## FACTUAL ALLEGATIONS

4.      Lamson and Goodnow is a Massachusetts corporation with a principal place of business at 45 Conway Street, Shelburne Falls, Massachusetts.

5.      Mr. Anderson is a citizen of the Commonwealth of Massachusetts and resides at 782 Colrain Road, Greenfield, Massachusetts. Mr. Anderson is the Chairman and Chief Executive Officer of Lamson and Goodnow.

6.      Mr. Anderson is the sole shareholder of Lamson and Goodnow.

7.      Upon information and belief, Mr. Dunn is a citizen of the State of Vermont and resides at 95 Chestnut Hill, Brattleboro, Vermont.

8.      Upon information and belief, Spiritual Trees is a Vermont corporation, incorporated on July 28, 1983, with a principal place of business at 95 Chestnut Hill, Brattleboro, Vermont.

9.      Lamson and Goodnow is in the business of manufacturing cutlery and kitchen tools.

10.     In or about February, 2000, Spiritual Trees was in the business of selling professional quality wooden cutting boards and kitchen utensils.

8

11.    By the Agreement, Lamson and Goodnow acquired certain assets of Spiritual Trees, including, but not limited to, inventory, certain machinery, and names and trade names, including "Spiritual Trees," "Tree Spirit," and "Amish Woods," and "all logos, copyrights or trademarks with respect thereto."

12.    Pursuant to paragraph 3 of the Agreement, Lamson and Goodnow was to pay, as additional consideration, commissions in a sum equal to four percent (4%) of Lamson and Goodnow's gross sales of (1) all items in the inventory acquired by Lamson and Goodnow pursuant to the Agreement ("Inventory Sales"); and (2) any wood utensils added to the Amish Woods line of products ("New Amish Woods Sales") (collectively, "Commission Payments"). Under the Agreement, "Gross Sales" were defined as "the total value of [Lamson and Goodnow's] invoices less returns and freight charges." Under the Agreement, Commission Payments were to be "made for a term of twenty-four (24) months and [were to] commence at the start of the nearest calendar month within two (2) months of closing."

13.    Spiritual Trees has breached the Agreement by, among other things, failing to transfer the "Tree Spirit" trademark and logo to Lamson and Goodnow.

14.    Lamson and Goodnow acquired from Spiritual Trees inventory valued at approximately $19,552.65. Lamson and Goodnow estimates that, in keeping with its customary pricing practices, the maximum amount of Lamson and Goodnow's Inventory Sales, before taking into account returns and freight charges, was approximately $39,105.30.

15.    Lamson and Goodnow estimates that during the first twenty-four months after execution of the Agreement, the maximum amount of Lamson and Goodnow's "New Amish Wood Sales" was approximately $50,699.00.

16.    Based on Lamson and Goodnow's estimates of Inventory Sales and New Amish Woods Sales (before appropriate deductions for returns and freight charges), Commission Payments would not have exceeded a total sum of approximately $3,592.17.

17.    On or about April 1, 2000, Lamson and Goodnow hired Mr. Dunn as an employee, in the position of General Manager of Operations. In that position, Mr. Dunn was the head of finance and accounting and was in charge of office personnel. Acting individually and as the principal and sole owner of Spiritual Trees, on behalf of Spiritual Trees, and as a condition of his employment with Lamson and Goodnow, Mr. Dunn agreed that Lamson and Goodnow had no obligation to pay any Commission Payments, and Mr. Dunn represented to Lamson and Goodnow, individually and on behalf of Spiritual Trees, that he waived all Commission Payments.

18.    Lamson and Goodnow relied on Mr. Dunn's promises and representations. Among other things, Lamson and Goodnow's offer of employment to Mr. Dunn and its decision to pay bonuses in the total amount of approximately $125,000 to Mr. Dunn during his employment with Lamson and Goodnow were conditioned upon Mr. Dunn's promises and representations.

19.    From on or about April 1, 2000, until his termination on March 30, 2004, Mr. Dunn was a highly paid employee of Lamson and Goodnow.

20.    As a result of his employment and position at Lamson and Goodnow, Mr. Dunn owed Lamson and Goodnow the duties of loyalty and of utmost good faith.

21.     Upon information and belief, on or about May 17, 2000, Spiritual Trees was administratively dissolved.

22.     In or about September, 2001, Mr. Dunn became Vice President of Finance and Operations at Lamson and Goodnow.

23.     On at least one occasion, in or about May, 2003, Mr. Dunn used the authority of his position with Lamson and Goodnow to convey to himself monies he knew to be the rightful property of Lamson and Goodnow.

24.     In or about August or September, 2003, Lamson and Goodnow appointed Mr. Dunn President and Chief Financial Officer ("CFO") of Lamson and Goodnow. Mr. Dunn held this position until his termination on March 30, 2004. Mr. Dunn's responsibilities included preparation of financial information of Lamson and Goodnow, including balance sheets and financial statements. Such financial information was provided to, and reviewed by, Lamson and Goodnow's accountants. In addition, such financial information was provided to, and relied on by, lenders in administering and renewing loans or credit to Lamson and Goodnow.

25.     As a result of his position at Lamson and Goodnow, Mr. Dunn had fiduciary obligations to Lamson and Goodnow, and to Mr. Anderson as the sole shareholder of Lamson and Goodnow, that required him to protect the interests of Lamson and Goodnow and to place the interests of Lamson and Goodnow above his own.

26.     At no time during his employment and before March 29, 2004, did Mr. Dunn indicate or cause to be indicated on Lamson and Goodnow's balance sheets or financial statements any liability in the form of Commission Payments claimed to be owed, nor did Mr. Dunn note to Lamson and Goodnow, or its agents or representatives,

the absence of such a liability on Lamson and Goodnow's balance sheets or financial statements. To the contrary, he represented to Lamson and Goodnow's accountants that he knew of no obligations of Lamson and Goodnow other than those listed on the balance sheets and/or financial statements, and Mr. Dunn confirmed the accuracy and completeness of the balance sheets and financial statements that did not reflect the Commission Payments. Such balance sheets and financial statements did indicate liabilities in the form of commissions owed to or paid to other parties.

27.    At no time following the parties' execution of the Agreement and before March 29, 2004, did Spiritual Trees, or Mr. Dunn, either acting individually or on behalf of Spiritual Trees, ever claim to Lamson and Goodnow, or to its agents or representatives, that Lamson and Goodnow owed any Commission Payments or seek to collect from Lamson and Goodnow any such Commission Payments.

28.    Lamson and Goodnow's calculation and payment of taxes in 2000 through 2004 was based on the financial information contained in the balance sheets that did not reflect the Commission Payments.

29.    In or about March, 2004, Mr. Anderson indicated to Mr. Dunn that he had concerns regarding Mr. Dunn's recent job performance.

30.    On or about March 29, 2004, contrary to his earlier representations and conduct, Mr. Dunn told Mr. Anderson that Lamson and Goodnow owed Commission Payments and late fees pursuant to the Agreement and that such Commission Payments and late fees should be reflected on Lamson and Goodnow's balance sheets.

31.    Despite the terms of the Agreement, which provided for Commission Payments on only two narrow categories of products, and contrary to his earlier

representations and conduct waiving Commission Payments, on March 31, 2004, Mr.

Dunn demanded commissions based on all of Lamson and Goodnow's sales in the Tree

Spirit line over the two-year period from 2000 to 2002.

32.    In a letter to Mr. Anderson dated March 31, 2004, Mr. Dunn stated: "The

aggregate balances recorded in the Lamson & Goodnow General Ledger Accounts for

Tree Spirit Sales Revenue, from March 2000 through February 2002, show total Sales

Revenue of $2,177,428.89. Based on the agreed rate of 4% and this Revenue amount,

Commissions of $87,097.16 were due." Mr. Dunn also claimed that Lamson and

Goodnow owed late fees in the amount of $45,465.23 and demanded immediate payment

in the amount of $132,562.39. A copy of Mr. Dunn's March 31, 2004, letter is attached

as Exhibit B.

33.    Upon information and belief, on or about April 23, 2004, the corporate

status of Spiritual Trees was reinstated by the State of Vermont.

34.    On or about May 14, 2004, Plaintiffs filed the Complaint in Massachusetts

Superior Court, Franklin County.

35.    Lamson and Goodnow and Mr. Anderson removed the action to this Court

on or about May 25, 2004.

36.    Following removal of the action, on or about, June 17, 2004, Plaintiffs

caused to be served on Lamson and Goodnow and Mr. Anderson process in the form of a

summons and complaint for the ulterior or illegitimate purpose of harassing Lamson and

Goodnow and Mr. Anderson or for some other ulterior or illegitimate purpose.

37.    At all relevant times, Plaintiffs, and each of them, knew that their claims

against Lamson and Goodnow and Mr. Anderson are wholly without merit.

38.     Mr. Dunn has violated his fiduciary duties to Lamson and Goodnow, and
to Mr. Anderson as the sole shareholder of Lamson and Goodnow, by, among other
things:

> a.   promoting and safeguarding his own interests at the expense of those
>      of Lamson and Goodnow and those of Mr. Anderson, as the sole
>      shareholder of Lamson and Goodnow;
>
> b.   failing to protect the financial interests of Lamson and Goodnow by,
>      among other things, failing disclose to Lamson and Goodnow, or its
>      agents or representatives, and failing to indicate or cause to be
>      indicated on Lamson and Goodnow's balance sheets and financial
>      statements, the Commission Payments Mr. Dunn now claims were
>      owed; and
>
> c.   converting to his own use property he knows belongs to Lamson and
>      Goodnow.

### FIRST CAUSE OF ACTION

(Lamson and Goodnow against Mr. Dunn)

(Promissory Estoppel)

39.     Lamson and Goodnow hereby incorporates the allegations set forth in the
paragraphs 1 through 38, above.

40.     Acting individually and as the principal and sole owner of Spiritual Trees,
on behalf of Spiritual Trees, and as a condition of his employment with Lamson and
Goodnow, Mr. Dunn agreed that Lamson and Goodnow had no obligation to pay any

14

Commission Payments, and Mr. Dunn represented to Lamson and Goodnow, individually and on behalf of Spiritual Trees, that he waived all Commission Payments.

41.     Lamson and Goodnow relied on Mr. Dunn's promises and representations.

42.     As a result of Mr. Dunn's conduct in seeking to compel payment of Commission Payments, Lamson and Goodnow has incurred substantial damage in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (Lamson and Goodnow against Mr. Dunn)

### (Conversion)

43.     Lamson and Goodnow hereby incorporates the allegations set forth in paragraphs 1 through 42, above.

44.     By the conduct described above, Mr. Dunn has converted the property of Lamson and Goodnow.

45.     As a direct and proximate result of Mr. Dunn's conversion, Lamson and Goodnow has incurred substantial damage, in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Lamson and Goodnow against Mr. Dunn)

### (Breach of Fiduciary Duties)

46.     Lamson and Goodnow hereby incorporates the allegations set forth in paragraphs 1 through 45, above.

47.     By the conduct described above, Mr. Dunn has breached his fiduciary duties to Lamson and Goodnow.

48.     As a direct and proximate result of Mr. Dunn's breach of his fiduciary duties, Lamson and Goodnow has incurred substantial damage, in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

(Mr. Anderson against Mr. Dunn)

(Breach of Fiduciary Duties)

49.     Mr. Anderson hereby incorporates the allegations set forth in paragraphs 1 through 48, above.

50.     By the conduct described above, Mr. Dunn has breached his fiduciary duties to Mr. Anderson, as the sole shareholder of Lamson and Goodnow.

51.     As a direct and proximate result of Mr. Dunn's breach of his fiduciary duties, Mr. Anderson has incurred substantial damage, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

(Lamson and Goodnow and Mr. Anderson against Spiritual Trees and Mr. Dunn)

(Abuse of Process)

52.     Lamson and Goodnow and Mr. Anderson hereby incorporate the allegations set forth in paragraphs 1 through 51, above.

53.     Plaintiffs' conduct described above constitutes abuse of process.

54.     As a direct and proximate result of Plaintiffs' conduct, Lamson and Goodnow and Mr. Anderson have incurred substantial damage, in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

(Lamson and Goodnow against Spiritual Trees)

(Breach of Contract)

55.    Lamson and Goodnow hereby incorporates the allegations set forth in paragraphs 1 through 54, above.

56.    By its conduct described above, Spiritual Trees has breached the terms of the Agreement.

57.    As a direct and proximate result of Spiritual Trees' breach of the terms of the Agreement, Lamson and Goodnow has incurred substantial damage, in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

(Lamson and Goodnow against Spiritual Trees)

(Violation of M.G.L. c. 93A, § 11)

58.    Lamson and Goodnow hereby incorporates the allegations set forth in paragraphs 1 through 57, above.

59.    At all relevant times, Spiritual Trees was engaged in trade or commerce.

60.    At all relevant times, Lamson and Goodnow was engaged in trade or commerce.

61.    The conduct of Spiritual Trees described above constitutes unfair or deceptive acts or practices violative of M.G.L. c. 93A, §§ 2 and 11.

62.    Spiritual Trees' violation of M.G.L. c. 93A has been willful.

63.    As a result of the conduct of Spiritual Trees, Lamson and Goodnow has incurred substantial damage, in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

(Lamson and Goodnow against Mr. Dunn)

(Violation of M.G.L. c. 93A, § 11)

64.    Lamson and Goodnow hereby incorporates the allegations set forth in paragraphs 1 through 63, above.

65.    At all relevant times, Mr. Dunn was engaged in trade or commerce.

66.    At all relevant times, Lamson and Goodnow was engaged in trade or commerce.

67.    The conduct of Mr. Dunn described above constitutes unfair or deceptive acts or practices violative of M.G.L. c. 93A, §§ 2 and 11.

68.    Mr. Dunn's violation of M.G.L. c. 93A has been willful.

69.    At all relevant times, Mr. Dunn was acting in furtherance of his own interests and contrary to the interests of Lamson and Goodnow.

70.    As a result of the conduct of Mr. Dunn, Lamson and Goodnow has incurred substantial damage, in an amount to be proven at trial.

WHEREFORE, Defendants pray that the Court enter judgment in favor of each of them as follows:

1.    An award of actual damages;

2.    An award of multiple damages up to three, but not less than two, times their actual damages;

3.    Interest as allowed by law;

4.    Costs;

5.    Reasonable attorneys' fees; and

6.     Such other relief as the Court deems just and proper.

JURY DEMAND

Defendants hereby demand a trial by jury on all issues so triable.

LAMSON AND GOODNOW
MANUFACTURING COMPANY and
J. ROSS ANDERSON, JR.,
By Their Attorneys,

_Vanessa L. Smith_

Sandra J. Staub
 BBO No. 555544
Vanessa L. Smith
 BBO No. 649258
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA  01115
Tel:  (413) 781-2820
Fax:  (413) 272-6804

Dated:  July 23, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of July, 2004, I caused a true and correct copy of the foregoing **Answer to Plaintiff's Complaint and Demand for Jury Trial and Counterclaim** to be served by hand delivery, upon the attorney of record for each other party.

_Vanessa L. Smith_

Vanessa L. Smith