# EXHIBIT A

**LAMSON AND GOODNOW MANUFACTURING COMPANY**
Conway Street
Shelburne Falls, MA  01370

January   , 2000

PERSONAL AND CONFIDENTIAL

Spiritual Trees, Inc.
d/b/a Tree Spirit
72 Cotton Mill Hill
P.O. Box 1920
Brattleboro, VT  05302

Attention David V. Dunn, President

Dear Mr. Dunn:

This letter sets forth the mutual agreement of Lamson and Goodnow Manufacturing Company of Shelburne Falls, Massachusetts ("Purchaser") and Spiritual Trees, Inc. d/b/a Tree Spirit, a Vermont corporation having an address of 72 Cotton Mill Hill, P.O. Box 1920, Brattleboro, Vermont ("Seller"), concerning the acquisition by Purchaser of certain assets of the Seller, including but not limited to inventory; and names and tradenames relating to Seller's business lines being sold to Purchaser as outlined on Exhibit "A," including "Spiritual Trees," "Tree Spirit," "Amish Woods"; and all logos, copyrights or trademarks with respect thereto; all customer lists and supplier lists; all intellectual property associated with such, including Seller's website and domain names; "800" telephone numbers; all advertising directories; rights to Seller's UPC code equipment; computer graphics files and related software; and all goodwill of the Seller and its business. (All the foregoing are sometimes called the "Assets"). The Assets are further described on Exhibit A attached hereto. David Dunn joins herein to agree to personally providing the consulting etc. needed with respect to the "Intellectual" Property.

1. Purchaser will acquire all the Assets of Seller and Seller will sell the Assets to Purchaser for a price determined as follows:

    1.1 Inventory shall be purchased for an amount equal to Seller's cost for such items based on a physical inventory to be jointly taken by Purchaser and Seller just prior to the closing. Purchaser shall have the right to reject any inventory it reasonably determines to be defective, obsolete or

otherwise unsalable. Any such rejected inventory may be sold or disposed of by Seller in any manner Seller desires.

1.2 Intellectual Property Assets, as defined on Exhibit A and including the consultation services to be provided by David Dunn, shall be purchased for an amount equal to Twelve Thousand Five Hundred Dollars ($12,500).

1.3 A Belco shrink wrap machine shall be purchased for One Thousand Dollars ($1,000).

1.4 All other Assets shall be purchased for an amount equal to Twelve Thousand Five Hundred Dollars ($12,500).

2. The Purchase Price shall be payable as follows:

2.1 One-third (1/3) of the total inventory valuation shall be paid at the closing; one-third (1/3) shall be paid within thirty (30) days of the closing; and the balance shall be paid within sixty (60) days of the closing.

2.2 Thirteen Thousand Five Hundred Dollars ($13,500) shall be paid at the closing with respect to the items in 1.2, 1.3 and 1.4, of which amount Seven Thousand Two Hundred Fifty Dollars ($7,250) shall be payable to Seller and Six Thousand Two Hundred Fifty Dollars ($6,250) shall be payable to David Dunn, and the remaining balance of Twelve Thousand Five Hundred Dollars ($12,500) shall be paid within thirty (30) days after closing, of which amount Six Thousand Two Hundred Fifty Dollars ($6,250) shall be payable to Seller and Six Thousand Two Hundred Fifty Dollars ($6,250) shall be payable to David Dunn.

3. As additional compensation, Seller shall receive a Commission equal to four percent (4%) of Gross Sales for all items acquired by Purchaser, as detailed in Exhibit A. In addition, any wood utensils added to the Amish Woods line will also receive a four percent (4%) Gross Sales Commission payment. Commission payments shall be made for a term of twenty-four (24) months and shall commence at the start of the nearest calendar month within two (2) months of closing. Gross Sales shall be defined as the total value of Purchaser's invoices less returns and freight charges. Purchaser agrees to provide Seller with a statement of each month's Commission calculations. Seller shall also have the right, at their expense, to audit such statements.

Payment of Commissions shall be made in arrears within thirty (30) days after the end of each three (3) month Commission period.

Purchaser shall pay Seller a late fee of one and one-half percent (1.50%) per month with respect to any Commissions not paid by its due date.

No Commissions shall be paid for unpaid sales. Charge-backs deducted from sales shall not be deducted from Commissions.

4. As part of the purchase price, Seller's principal, David V. Dunn, shall provide, at no additional cost to Purchaser, reasonable consulting services to Purchaser for a period of two (2) months starting on the closing date, and shall cooperate with Purchaser to coordinate a smooth transfer of customer and supplier relationships, and to assist in moving the Assets from Seller's place of business to Purchaser's.

5. The Purchaser shall not assume any liabilities of the Seller's Business or the Assets. The Seller shall be solely responsible for paying all accounts payable, sales and transfer taxes and other liabilities, and shall remain responsible for any such liabilities post closing. The Assets shall be conveyed to Purchaser free and clear of all liens and encumbrances.

6. The Seller shall retain all accounts receivable for jobs which have been completed by and invoiced through the closing, and all prepaid expenses and refunds.

Any unfilled, open or dated orders existing as of the closing shall belong to Purchaser and shall be transferred as part of the Assets.

7. Purchaser shall have the right until the closing to such due diligence investigation as it deems prudent. During said period, the Seller shall provide the Purchaser and its representatives access to and copies of any and all property, books, records of the Product Lines to be sold hereunder, contracts, agreements and other information relating to the Assets to enable the Purchaser to complete its due diligence investigation. Seller agrees to make such information available at reasonable times Monday through Saturday during the due diligence investigation period.

8. At the closing, Seller shall provide Purchaser with bills of sale, covenants, assignments and such other documents as may be needed to transfer title and ownership of the Assets to Purchaser, together with such corporate votes, lien releases and other documents as are customarily needed. Purchaser shall provide Seller and/or David Dunn, as applicable, with the portion of the purchase price which is to be paid at closing and demand notes, without interest, for the balance. Seller will represent that all items being sold hereunder are free and clear of all liens.

- 3 -

9. It is contemplated by the parties that a closing would occur on _____, 2000. Pending a closing, Seller shall continue to operate in the ordinary course of business.

10. The following conditions shall also apply:

    10.1 All costs of moving inventory and equipment are for Purchaser's account. Seller will make staff available to assist in the move on a contract basis if requested by Purchaser.

    10.2 Costs of maintaining e-mail accounts, domain names, etc. shall be borne by Purchaser.

    10.3 Purchaser will not be liable for any costs associated with the closing of Seller's offices or for its costs and expenses of this transaction.

    10.4 Purchaser will not be liable for any accounts payable liabilities, debt or any other corporate obligation of Seller.

    10.5 Seller and David Dunn individually agree they will not, for a period starting on the Closing Date and ending three (3) years after the end of the Commission Period, compete with Purchaser, whether directly or indirectly, for their own account or as an employee, director, shareholder, agent, salesman, partner, officer or otherwise with respect to the wood utensils, oil and accessories being sold to Purchaser. This restriction shall cover the entire United States.

11. Each of the parties hereto will cooperate in good faith and proceed expeditiously in the preparation of the documents and the taking of other actions necessary to consummate the transactions contemplated hereby. Seller agrees not to offer to sell any Assets to any other person or entity for a period of fourteen (14) days (except for dispositions of inventory in the ordinary course of business), and not to negotiate or accept any agreement for the sale of any interest in the Business or the Assets which are to be sold to Purchaser hereunder, to any third party.

12. Each party will pay its own expenses and costs incidental to the completion of the transactions contemplated by this letter agreement, including legal and accounting fees.

13. Each of the parties hereto agrees to indemnify each of the other parties hereto against any claim for brokerage fees owed to any broker employed by the indemnifying party in connection with the transactions contemplated by this letter. Each of the parties warrants that it has not contracted with a broker,

14. This letter agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts. This letter may not be amended, terminated, waived or rescinded except pursuant to a written agreement duly executed by the parties hereto. This letter may be signed in counterparts, each of which shall constitute an original but all of which shall constitute one and the same instrument.

15. This letter may be accepted in writing by you until _____, 2000 and will terminate if not accepted by you by the close of business on that date. If accepted, please sign, date and return a duplicate original to the undersigned.

Very truly yours,

LAMSON AND GOODNOW
MANUFACTURING COMPANY

By_____
J. Ross Anderson, Jr., President

Agreed to and accepted this _____ day of _____, 2000. The Seller represents that it has received all necessary stockholder and director consents, and any other required parties, which are necessary to execute and deliver this letter agreement and fulfill the Seller's obligations hereunder.

SPIRITUAL TREES, INC.

By_____
David V. Dunn, President

- 5 -

# TREE SPIRIT SALE PROPOSAL
# TO
# LAMSON & GOODNOW

January 26, 2000

## Lines To Be Sold

- **Amish Woods**
  Including all rights to copyrighted name, graphics, distribution lists, open and dated orders, and existing inventory at cost. Inventory will include product, tags, box stickers, hang tags, plastic ties and branding equipment. In addition, any existing sell sheets, Sales will be provided by item by Account. Also included will be a manufacuturers letter stating that you will be one of two distributors.

- **Wood Condiment Cups**
  Including all packaging designs, graphics, distribution lists, open and dated orders and existing inventory at cost. Inventory will include boxes, tags, packaging and any other components needed to complete products, at cost. Also, all suppliers and alternates. Sales by Account will be provided.

- **Wood Accessories**
  Including all packaging, designs, graphics, distribution lists, open and dated orders and existing inventory at cost for Salad/Pasta Helpers, Honey Dipper, Pasta Measure, Soap Dishes, Plate/Bowl Racks and any other items in the Accessories line. Inventory will include boxes, tags, packaging and any other components needed to complete products, at cost. Also, all suppliers, costs and alternates. Sales by Account will be provided.

- **Mineral Oil**
  Including all packaging, designs, graphics, distribution lists, open and dated orders, private label designs and existing inventory at cost. Inventory will include drums, pump and racks. Also included will be all equipment and supplies. A list of suppliers and alternates and costs will be provided.

- **Other Items**
  - Sale of unrestricted rights and use of the Tree Spirit name and logo.
  - Full customer list with product pricing, contact names and phone numbers.
  - Full supplier list with product, cost, contact name and phone number.

- **Asset Sales**
  - Branding equipment and Tree Spirit brands but not customer brands (which are owned by the customers).
  - Computer graphics files and digital images of all purchased product lines.
  - Tree Spirit Trademark and Logo, copyright to Amish Woods.
  - Mineral Oil tanks and drying racks.
  - Catalog sell sheets and folders.
  - Forwarding 800 numbers
  - Rights to Tree Spirit Web site including domain names.

## Proposed Sale Structure

For accounting purposes assets should be separated from intellectual property (depreciation issue).

### Assets:
1. All inventory at Cost.
2. Tree Spirit Trademark and Logo and Amish Woods copyright.
3. Rights to the use of Tree Spirit's UPC code.
4. All equipment.
5. All computer graphics files.
6. All customer and supplier lists.
7. All Existing open and dated orders:
8. UPC Coding software and stickers.
9. Web Site and rights to Domain names for "Tree Spirit.com" and "Wood Utensils.Com"

      Sale Price:   Inventory at cost plus $12,500

### Intellectual Property:
1. Customer and Supplier introduction and relationship exchange between Tree Spirit and Lamson.
2. Consultation on business development (up to two months).
3. Set up of systems and operations within Lamson.

      Sale Price:                 $12,500
      Plus:  4% commission on Gross Sales over 2 years, commencing two months after signing this agreement and paid quarterly.

# TREE SPIRIT SALE PROPOSAL
# TO
# LAMSON & GOODNOW

January 26, 2000

### Proposed Payment Schedule

**Assets:**

Inventory - 1/3 on Agreement, 1/3 30 days, balance 60 days.
Other - $6,250 upon Agreement, $6,250 30 days.

**Intellectual Property:**

$6,250 after signing Agreement
$6,250 30 days after signing Agreement

**Commissions:**

4% on gross sales, payable in arrears within 30 days of the close of the quarter for a period of two years commencing two months after the signing of this agreement.

**Other Items:**
- Belco Shrink wrap machine ($1,000)

**Other**
- All costs of moving inventory and equipment are for Lamson's account. Tree Spirit will make staff available to assist in the move on a contract basis. David Dunn agrees to assist as part of the sale contract.
- Costs of maintaining e-mail accounts, domain names, etc. shall be borne by Lamson.
- Lamson will not be liable for any costs associated with the closing of Tree Spirit's offices.
- Lamson will not be liable for any accounts payable liabilities, debt or any other corporate obligation of Tree Spirit.

# EXHIBIT B

**David V. Dunn**
95 Chestnut Hill
Brattleboro, VT 05301
(802) 257 – 4428
dvdunn50@adelphia.net

March 31, 2004

Mr. Ross Anderson, Chairman
Lamson & Goodnow Mfg. Co.
45 Conway Street
Shelburne Falls, MA 01370

<u>DEMAND FOR PAYMENT</u>
Via Facsimile and Certified Mail

Dear Mr. Anderson,

With reference to our Purchase/Sale Agreement dated February 1, 2000, I am giving Lamson & Goodnow notice that as per Paragraph 3, all Commissions on Gross Sales are unpaid and past due.

The aggregate balances recorded in the Lamson & Goodnow General Ledger Accounts for Tree Spirit Sales Revenue, from March 2000 through February 2002, show total Sales Revenue of $2,177,428.89. Based upon the agreed rate of 4% and this Revenue amount, Commissions of $87,097.16 were due.

Also, as per paragraph 3, a Late Fee of 1.50% per month with respect to any Commissions not paid by their due date is also due. Based upon this rate and calculated from the monthly General Ledger Balances, $45,465.23 is currently due for Late Fees. A summary is attached. This amount increases by $1,306.46 monthly.

The total amount, for immediate payment, to settle this Contract is: $132,562.39

If I do not receive a check or other satisfactory response from Lamson & Goodnow Mfg. Co. within 48 hours, this letter shall serve as notice of my intent to file suit for collections, including Commissions, continuing Late Fees and attorney's fees. Please make your check payable to David V. Dunn/Spiritual Trees Inc.

This document does not limit my rights to pursue other claims against Lamson & Goodnow.

Sincerely,

David V. Dunn
President
Spiritual Trees, Inc., d/b/a Tree Spirit