COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT

FRANKLIN, SS.                                    SUPERIOR COURT DEPARTMENT
                                                 CIVIL ACTION NO._____   .

SPIRITUAL TREES d/b/a TREE SPIRIT         )
and DAVID V. DUNN                         )
        Plaintiffs                        )
                                          )
vs.                                       )
                                          )
LAMSON AND GOODNOW                        )
MANUFACTURING COMPANY and                 )
J. ROSS ANDERSON, JR.                     )
        Defendants                        )

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1.  The plaintiff, Spiritual Trees d/b/a Tree Spirit ("Tree Spirit"), was, at all times herein relevant, a Vermont for profit corporation with a principal place of business at 95 Chestnut Hill, Brattleboro, Windham County, Vermont.

2.  The plaintiff, David V. Dunn ("Dunn"), is a natural person who resides at 95 Chestnut Hill, Brattleboro, Windham County, Vermont, and was, at all times herein relevant, the President and sole owner of Tree Spirit.

3.  The defendant, Lamson and Goodnow Manufacturing Company ("Lamson"), is a Massachusetts for profit corporation with its principal place of business at 45 Conway Street, Shelburne Falls, Franklin County, Massachusetts.

4.  The defendant, J. Ross Anderson, Jr. ("Anderson"), is a natural person who resides at 782 Colrain Road, Greenfield, Hampshire County, Massachusetts, and is the Chairman/CEO of Lamson.

360372

## FACTS

5.  On or about February 1, 2000, Dunn sold Tree Spirit to Lamson. (See Contract of Sale attached as Exhibit A).

6.  Pursuant to paragraph 3 of the contract, Tree Spirit was to receive a commission equal to four percent (4%) of gross sales for all items acquired from Tree Spirit by Lamson, including any wood utensils added to the Amish Woods line.

7.  The commission payments outlined above were to be made for a term of twenty-four (24) months to commence on the start of the nearest calendar month within two months of closing.

8.  Pursuant to the contract, Lamson agreed to provide Tree Spirit with a statement of each month's commission calculations.

9.  Payment of such commissions were to be made within thirty (30) days after the end of each three month commission period.

10. The contract also requires Lamson to pay Tree Spirit a late fee of one and one-half percent (1.50%) per month with respect to any commissions not paid by the due date.

11. Pursuant to paragraph 4 of the contract, Dunn began to provide consulting services to Lamson.

12. Soon thereafter, Lamson hired Dunn as an employee and Dunn continued to work for Lamson, eventually becoming President of the company.

13. Because Lamson was experiencing financial difficulties and cash flow problems, Dunn verbally agreed to defer the commission payments to Tree Spirit while he was an employee of Lamson.

14. In 2001, Lamson proposed giving Dunn 10% stock ownership in Lamson and Dunn agreed he would waive commissions and late fees due Tree Spirit if the stock was given.

15. In 2002, Lamson gave Dunn a written stock grant proposal that was never executed.

16. No stock has ever been given to Dunn.

17. Dunn never agreed to waive the payment of commissions to Tree Sprit and never agreed to waive late fees if the stock was not received.

18. Dunn and Tree Spirit performed all of their obligations under the contract.

19. During the first two years after the purchase of Tree Spirit by Lamson, Dunn, as an employee, made a record of the sales revenues reported in Lamson's General Ledger Tree Spirit revenue accounts. Lamson's gross sales of Tree Spirit products during that time totaled $2,177,428.84. (See Commissions and Late Fees, attached as Exhibit B).

20. Pursuant to the Contract of Sale, commissions due on those gross sales total $87,097.16, with late fees totaling $45,465.23 as of March 31, 2004, and continuing to accrue.

21. In February, 2004, Dunn was promised a bonus of $75,000.00 based on Lamson's year to date performance for the fiscal year starting August 1, 2003.

22. Dunn and others in the company had been budgeted for and had been paid bonuses in past fiscal years, according to amounts set by Anderson.

23. As of March 29, 2004, Lamson was meeting its budgeted goals, and Dunn's budgeted bonus had been accruing as budgeted.

24. On March 29, 2004, Anderson advised Dunn that Lamson did not owe Tree Spirit any commissions and that Lamson would not be paying Tree Spirit any commissions.

25. On March 29, 2004 the defendant, Anderson, terminated Dunn from Lamson without cause or notice.

26. On March 29, 2004, while Dunn was attempting to retrieve his personal belongings, Anderson physically assaulted him, grabbed his briefcase and attempted to search it, and grabbed his arms and attempted to restrain him from leaving the premises. This conduct was witnessed by several employees of Lamson.

360372

27. On March 29, 2004, Lamson, at Anderson's request, contacted state and local police and advised them that Dunn had stolen company property.

28. Lamson, through Anderson, advised the company's attorney that Dunn had been terminated due to his theft of laptop computer that was seized from Dunn by the Buckland Police.

29. Lamson, through Anderson, reported to the Department of Employment and Training that Dunn had been terminated for theft and for failing to carry a company liability on Lamson's financial statements.

30. These statements were false and intended to damage Dunn's reputation and were made with actual malice on the part of Anderson.

31. On March 31, 2004, Dunn, on behalf of Tree Spirit, demanded payment of owed commissions and late fees.

32. To date, Lamson has not paid Tree Spirit any commissions or late fees owed under the contract.

33. To date, Lamson has not paid Dunn any of the promised accrued bonus for fiscal year 2004.

### COUNT I
### (Tree Spirit v. Lamson and Goodnow Manufacturing Company)
### BREACH OF CONTRACT

34. The plaintiffs repeat and reallege their allegations contained in paragraphs 1 through 33 and incorporate them herein by reference.

35. In 2000, the plaintiff, Tree Spirit, entered into a Contract of Sale with the defendant, Lamson.

36. Pursuant to paragraph 3 of the contract, Tree Spirit was to receive a commission equal to four percent (4%) of gross sales for all items, acquired from Tree Spirit by Lamson, including any wood utensils added to the Amish Woods line.

37. The contract also required Lamson to pay Tree Spirit a late fee of one and one-half percent (1.50%) per month with respect to any commissions not paid by the due date.

38. Pursuant to the Contract of Sale, commissions due on those gross sales total $87,097.16, with late fees totaling $45,465.23 as of March 31, 2004, and continuing to accrue.

39. Dunn & Tree Spirit performed all of their obligations under the contract.

40. Lamson did not provide Tree Spirit with the consideration stated in the contract and, therefore, Lamson has breached its contract with Tree Spirit.

WHEREFORE, the plaintiffs request that judgment be entered in their favor and against the defendant, Lamson, in the amount of $132,562.39, plus attorneys' fees, costs, interest and for such other and further relief as this court deems just and proper.

## COUNT II
### (David Dunn and Tree Spirit v. Lamson and Goodnow Manufacturing Company and J. Ross Anderson, Jr.)
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

41. The plaintiffs repeat and reallege their allegations contained in paragraphs 1 through 40 and incorporate them herein by reference.

42. The conduct of the defendants, Lamson and Anderson, in terminating Dunn to deprive him of his earned bonus, constitutes a breach of the implied covenant of good faith and fair dealing.

43. The conduct of the defendants, Lamson and Anderson, in refusing to pay Tree Spirit owed commissions and late fees constitutes a breach of implied covenant of good faith and fair dealing.

360372

44. As a result of the defendants' breach of the implied covenant of good faith and fair dealing, Dunn and Tree Sprit have sustained damages.

WHEREFORE, the plaintiffs request that judgment be entered in their favor and against the defendants for damages as a result of the breach together with attorneys' fees, costs, interest and for such other and further relief as this court deems just and proper.

### COUNT III
### (David Dunn v. J. Ross Anderson, Jr.)
### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

45. The plaintiffs repeat and reallege their allegations contained in paragraphs 1 through 44 and incorporate them herein by reference.

46. In 2000, the plaintiff, Tree Spirit, entered into a contract of sale with the defendant, Lamson.

47. The defendant, Anderson, knew that Tree Spirit and Lamson had entered into a contract.

48. The conduct of the defendant, Anderson, in improperly inducing Lamson to breach its contract with Tree Spirit amounts to an intentional and tortious interference with a contractual relation.

WHEREFORE, the plaintiffs request that judgment be entered in their favor against the defendant, Anderson for damages to its economic interests, including loss of contractual damages, consequential damages, plus attorneys' fees, costs, interest and for such other and further relief as this court deems just and proper.

### COUNT IV
### (David Dunn v. J. Ross Anderson, Jr.)
### ASSAULT AND BATTERY

49. The plaintiffs repeat and reallege their allegations contained in paragraphs 1 through 48 and incorporate them herein by reference.

360372

50.   On March 29, 2004, Anderson physically assaulted Dunn, grabbed his arms and briefcase and attempted to restrain him.

51.   By his conduct, Anderson intentionally created in Dunn a reasonable apprehension of impending physical harm.

52.   Dunn did not consent to Anderson's conduct.

53.   Anderson's conduct constituted an intentional and unjustified use of force against Dunn.

WHEREFORE, the plaintiffs request that judgment be entered in their favor and against the defendant, Anderson, for damages including damages for emotional distress, humiliation, and indignity, plus attorneys' fees, costs, interest and for such other and further relief as this court deems just and proper.

## COUNT V
### (David Dunn v. J. Ross Anderson, Jr.)
### FALSE IMPRISONMENT

54.   The plaintiffs repeat and reallege their allegations contained in paragraphs 1 through 53 and incorporate them herein by reference.

55.   By intending to imprison or restrain Dunn and to prevent him from leaving the premises, Anderson is liable for false imprisonment.

56.   Anderson's intended restraint of Dunn was against his will.

57.   Dunn was conscious of the intended restraint of Anderson.

WHEREFORE, the plaintiffs request that judgment be entered in their favor and against the defendant, Anderson, for damages together with attorneys' fees, costs, interest and for such other and further relief as this court deems just and proper.

## COUNT VI
### (David Dunn v. J. Ross Anderson, Jr.)
### DEFAMATION

8

58.  The plaintiffs repeat and reallege their allegations contained in paragraphs 1 through 57 and incorporate them herein by reference.

59.  By making false statements to third parties that Dunn had engaged in theft and was terminated from his employment for theft of company property and for other improper behavior, the defendant, Anderson, has defamed Dunn, has held him up to public scorn and has discredited his reputation.

60.  By making false statements that Dunn committed a crime, the defendant, Anderson, is liable for *per se* defamation.

61.  By his conduct in assaulting Dunn, attempting to seize and search his briefcase and attempting to restrain him in front of Lamson employees, Anderson has defamed Dunn, and held him up to public scorn and has harmed his reputation.

WHEREFORE, the plaintiffs request that judgment be entered in their favor against the defendant, Anderson, for damages together with attorneys' fees, costs, interest and for such other and further relief as this court deems just and proper.

THE PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

THE PLAINTIFFS
SPIRITUAL TREES d/b/a TREE SPIRIT
AND DAVID V. DUNN

By _Patricia M. Rapinchuk_
Patricia M. Rapinchuk, Esq., of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 785-4658
BBO No.: 556149

Date: 5-13-04

360372



2/01/00  TUE 15:37 FAX
02/01/00  15:00    3156390015    A    A    A    → 914136259816
02/01/00  TUE 10:33 FAX
02/01/2000  08:44    4137745187              LEVY WINER

# LAMSON AND GOODNOW MANUFACTURING COMPANY
## Conway Street
## Shelburne Falls, MA 01370

January    , 2000

<u>PERSONAL AND CONFIDENTIAL</u>

Spiritual Trees, Inc.
d/b/a Tree Spirit
72 Cotton Mill Hill
P.O. Box 1920
Brattleboro, VT  05302

Attention David V. Dunn, President

Dear Mr. Dunn:

This letter sets forth the mutual agreement of Lamson and Goodnow Manufacturing Company of Shelburne Falls, Massachusetts ("Purchaser") and Spiritual Trees, Inc. d/b/a Tree Spirit, a Vermont corporation having an address of 72 Cotton Mill Hill, P.O. Box 1920, Brattleboro, Vermont ("Seller"), concerning the acquisition by Purchaser of certain assets of the Seller, including but not limited to inventory; and names and tradenames relating to Seller's business lines being sold to Purchaser as outlined on Exhibit "A." including "Spiritual Trees," "Tree Spirit," "Amish Woods"; and all logos, copyrights or trademarks with respect thereto; all customer lists and supplier lists; all intellectual property associated with such, including Seller's website and domain names; "800" telephone numbers; all advertising directories; rights to Seller's UPC code equipment; computer graphics files and related software; and all goodwill of the Seller and its business.  (All the foregoing are sometimes called the "Assets"). The Assets are further described on Exhibit A attached hereto.  David Dunn joins herein to agree to personally providing the consulting etc. needed with respect to the "Intellectual" Property.

1.    Purchaser will acquire all the Assets of Seller and Seller will sell the Assets to Purchaser for a price determined as follows:

   1.1   Inventory shall be purchased for an amount equal to Seller's cost for such items based on a physical inventory to be jointly taken by Purchaser and Seller just prior to the closing.  Purchaser shall have the right to reject any inventory it reasonably determines to be defective, obsolete or



02/01/00  15:00    3156388015    A    A    A    → 914136259816        NO.546  P002
02/01/00  TUE 10:33 FAX                                               📑002
12/01/2000  08:44    4137745187              LEVY WINER              PAGE  03

otherwise unsalable.  Any such rejected inventory may be sold or disposed of by Seller in any manner Seller desires.

1.2   Intellectual Property Assets, as defined on Exhibit A and including the consultation services to be provided by David Dunn, shall be purchased for an amount equal to Twelve Thousand Five Hundred Dollars ($12,500).

1.3   A Belco shrink wrap machine shall be purchased for One Thousand Dollars ($1,000).

1.4   All other Assets shall be purchased for an amount equal to Twelve Thousand Five Hundred Dollars ($12,500).

2.   The Purchase Price shall be payable as follows:

2.1   One-third (1/3) of the total inventory valuation shall be paid at the closing; one-third (1/3) shall be paid within thirty (30) days of the closing; and the balance shall be paid within sixty (60) days of the closing.

2.2   Thirteen Thousand Five Hundred Dollars ($13,500) shall be paid at the closing with respect to the items in 1.2, 1.3 and 1.4, of which amount Seven Thousand Two Hundred Fifty Dollars ($7,250) shall be payable to Seller and Six Thousand Two Hundred Fifty Dollars ($6,250) shall be payable to David Dunn, and the remaining balance of Twelve Thousand Five Hundred Dollars ($12,500) shall be paid within thirty (30) days after closing, of which amount Six Thousand Two Hundred Fifty Dollars ($6,250) shall be payable to Seller and Six Thousand Two Hundred Fifty Dollars ($6,250) shall be payable to David Dunn.

3.   As additional compensation, Seller shall receive a Commission equal to four percent (4%) of Gross Sales for all items acquired by Purchaser, as detailed in Exhibit A.  In addition, any wood utensils added to the Amish Woods line will also receive a four percent (4%) Gross Sales Commission payment. Commission payments shall be made for a term of twenty-four (24) months and shall commence at the start of the nearest calendar month within two (2) months of closing.  Gross Sales shall be defined as the total value of Purchaser's invoices less returns and freight charges.  Purchaser agrees to provide Seller with a statement of each month's Commission calculations. Seller shall also have the right, at their expense, to audit such statements.

Payment of Commissions shall be made in arrears within thirty (30) days after the end of each three (3) month Commission period.

- 2 -



02/01/00  15:00    3156380015       A        A        A       → 914136259816        NO.548  P003  ☒003
02/01/00  TUE 10:34 FAX          4137745187          LEVY WINER                            PAGE  12 ⁊      ☒003
02/01/2000  10:15    4137745187

Purchaser shall pay Seller a late fee of one and one-half percent (1.50%) per month with respect to any Commissions not paid by its due date.

No Commissions shall be paid for unpaid sales. Charge-backs deducted from sales shall not be deducted from Commissions.

4. As part of the purchase price, Seller's principal, David V. Dunn, shall provide, at no additional cost to Purchaser, reasonable consulting services to Purchaser for a period of two (2) months starting on the closing date, and shall cooperate with Purchaser to coordinate a smooth transfer of customer and supplier relationships, and to assist in moving the Assets from Seller's place of business to Purchaser's.

5. The Purchaser shall not assume any liabilities of the Seller's Business or the Assets. The Seller shall be solely responsible for paying all accounts payable, sales and transfer taxes and other liabilities, and shall remain responsible for any such liabilities post closing. The Assets shall be conveyed to Purchaser free and clear of all liens and encumbrances.

6. The Seller shall retain all accounts receivable for jobs which have been completed by and invoiced through the closing, and all prepaid expenses and refunds.

Any unfilled, open or dated orders existing as of the closing shall belong to Purchaser and shall be transferred as part of the Assets.

7. Purchaser shall have the right until the closing to such due diligence investigation as it deems prudent. During said period, the Seller shall provide the Purchaser and its representatives access to and copies of any and all property, books, records of the Product Lines to be sold hereunder, contracts, agreements and other information relating to the Assets to enable the Purchaser to complete its due diligence investigation. Seller agrees to make such information available at reasonable times Monday through Saturday during the due diligence investigation period.

8. At the closing, Seller shall provide Purchaser with bills of sale, covenants, assignments and such other documents as may be needed to transfer title and ownership of the Assets to Purchaser, together with such corporate votes, lien releases and other documents as are customarily needed. Purchaser shall provide Seller and/or David Dunn, as applicable, with the portion of the purchase price which is to be paid at closing and demand notes, without interest, for the balance. Seller will represent that all items being sold hereunder are free and clear of all liens.

- 3 -



9. It is contemplated by the parties that a closing would occur on _____, 2000. Pending a closing, Seller shall continue to operate in the ordinary course of business.

10. The following conditions shall also apply:

10.1 All costs of moving inventory and equipment are for Purchaser's account. Seller will make staff available to assist in the move on a contract basis if requested by Purchaser.

10.2 Costs of maintaining e-mail accounts, domain names, etc. shall be borne by Purchaser.

10.3 Purchaser will not be liable for any costs associated with the closing of Seller's offices or for its costs and expenses of this transaction.

10.4 Purchaser will not be liable for any accounts payable liabilities, debt or any other corporate obligation of Seller.

10.5 Seller and David Dunn individually agree they will not, for a period starting on the Closing Date and ending three (3) years after the end of the Commission Period, compete with Purchaser, whether directly or indirectly, for their own account or as an employee, director, shareholder, agent, salesman, partner, officer or otherwise with respect to the wood utensils, oil and accessories being sold to Purchaser. This restriction shall cover the entire United States.

11. Each of the parties hereto will cooperate in good faith and proceed expeditiously in the preparation of the documents and the taking of other actions necessary to consummate the transactions contemplated hereby. Seller agrees not to offer to sell any Assets to any other person or entity for a period of fourteen (14) days (except for dispositions of inventory in the ordinary course of business), and not to negotiate or accept any agreement for the sale of any interest in the Business or the Assets which are to be sold to Purchaser hereunder, to any third party.

12. Each party will pay its own expenses and costs incidental to the completion of the transactions contemplated by this letter agreement, including legal and accounting fees.

13. Each of the parties hereto agrees to indemnify each of the other parties hereto against any claim for brokerage fees owed to any broker employed by the indemnifying party in connection with the transactions contemplated by this letter. Each of the parties warrants that it has not contracted with a broker.

- 4 -



02/01/00  TUE 15:39 FAX                                                                           @005
    02/01/00  15:01    3156300015    A    A    A    → 914136259816              NO.548  P005  @005

02/01/00  TUE 10:35 FAX                                       LEVY WINER                        PAGE 06
02/01/2000  08:44    4137745187

14. This letter agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts. This letter may not be amended, terminated, waived or rescinded except pursuant to a written agreement duly executed by the parties hereto. This letter may be signed in counterparts, each of which shall constitute an original but all of which shall constitute one and the same instrument.

15. This letter may be accepted in writing by you until _____, 2000 and will terminate if not accepted by you by the close of business on that date. If accepted, please sign, date and return a duplicate original to the undersigned.

Very truly yours,

LAMSON AND GOODNOW
MANUFACTURING COMPANY

By _____

J. Ross Anderson, Jr., President                    2-1-2000

Agreed to and accepted this ____1st____ day of February, 2000. The Seller represents that it has received all necessary stockholder and director consents, and any other required parties, which are necessary to execute and deliver this letter agreement and fulfill the Seller's obligations hereunder.

SPIRITUAL TREES, INC.

By _____, President

David V. Dunn, President

- 5 -



# Lamson & Goodnow Mfg. Co., Commissions and Late Fees Due David V. Dunn

General Ledger Account Balances
From: March-00
To: February-02

EXHIBIT
B

| ID | Account Name | Acct Year | Period | Month | Balance | Quarterly Period Balance | Contractually Due | Days to Today's Date 30-Mar-04 | Late Fees @ 1.5% per Month |
|---|---|---|---|---|---|---|---|---|---|
| 4500 Old GL - Sales Wood Products | | 2000 | 8 | March | $ 83,793.87 | | | | |
| 4500 Old GL - Sales Wood Products | | 2000 | 9 | April | $ 66,130.41 | | | | |
| 4500 Old GL - Sales Wood Products | | 2000 | 10 | May | $ 72,331.52 | | | | |
| 4500 Old GL - Sales Wood Products | | 2000 | 11 | June | $ 59,472.31 | $ 222,255.80 | 30-Jun-00 | 1369 | $ 6,085.36 |
| 4500 Old GL - Sales Wood Products | | 2000 | 12 | July | $ 70,003.61 | | | | |
| 4740 Sales - Tree Spirit | | 2000 | 1 | August | $ 31,754.01 | | | | |
| 4740 Sales - Tree Spirit | | 2001 | 1 | August | $ 52,840.33 | $ 214,070.26 | 30-Sep-00 | 1277 | $ 5,467.35 |
| 4500 Old GL - Sales Wood Products | | 2001 | 2 | September | $ 77,369.70 | | | | |
| 4740 Sales - Tree Spirit | | 2001 | 2 | September | $ 25,814.79 | | | | |
| 4500 Old GL - Sales Wood Products | | 2001 | 3 | October | $ 188,861.76 | | | | |
| 4740 Sales - Tree Spirit | | 2001 | 3 | October | $ 11,379.62 | | | | |
| 4500 Old GL - Sales Wood Products | | 2001 | 4 | November | $ 75,066.86 | | | | |
| 4740 Sales - Tree Spirit | | 2001 | 4 | November | $ 6,203.44 | $ 384,695.17 | 30-Nov-00 | 1216 | $ 9,355.79 |
| 4500 Old GL - Sales Wood Products | | 2001 | 5 | December | $ 57,092.83 | | | | |
| 4740 Sales - Tree Spirit | | 2001 | 5 | December | $ 4,062.96 | | | | |
| 4500 Old GL - Sales Wood Products | | 2001 | 6 | January | $ 63,155.24 | | | | |
| 4740 Sales - Tree Spirit | | 2001 | 6 | February | $ 56,283.16 | $ 180,594.19 | 30-Mar-01 | 1096 | $ 3,958.62 |
| 4740 Sales - Tree Spirit | | 2001 | 8 | March | $ 89,699.24 | | | | |
| 4740 Sales - Tree Spirit | | 2001 | 8 | March | $ 182.10 | | | | |
| 4500 Old GL - Sales Wood Products | | 2001 | 8 | April | $ 103,124.43 | | | | |
| 4740 Sales - Tree Spirit | | 2001 | 9 | May | $ 85,635.73 | $ 278,641.50 | 30-Jun-01 | 1004 | $ 5,595.12 |
| 4740 Sales - Tree Spirit | | 2001 | 10 | June | $ 114,886.46 | | | | |
| 4740 Sales - Tree Spirit | | 2001 | 11 | July | $ 102,564.17 | | | | |
| 4740 Sales - Tree Spirit | | 2001 | 12 | August | $ 140,192.94 | $ 357,643.57 | 30-Sep-01 | 912 | $ 6,523.42 |
| 4740 Sales - Tree Spirit | | 2002 | 1 | September | $ 125,583.92 | | | | |
| 4740 Sales - Tree Spirit | | 2002 | 2 | October | $ 114,672.70 | | | | |
| 4740 Sales - Tree Spirit | | 2002 | 3 | November | $ 88,438.41 | $ 328,695.03 | 30-Dec-01 | 821 | $ 5,397.17 |
| 4740 Sales - Tree Spirit | | 2002 | 4 | December | $ 37,963.26 | | | | |
| 4740 Sales - Tree Spirit | | 2002 | 5 | January | $ 80,764.03 | | | | |
| 4740 Sales - Tree Spirit | | 2002 | 6 | February | $ 92,106.08 | $ 210,833.37 | 30-Mar-02 | 731 | $ 3,082.38 |
| 4740 Sales - Tree Spirit | | 2002 | 7 | | | | | | |

Total Sales: $ 2,177,428.89
Commissions due @ 4.00%: $ 87,097.16

Total Late Fees: $ 45,465.23