# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 3:04-CV-30102-KPN
Pages 1-48

SPIRITUAL TREES d/b/a TREE
SPIRIT and DAVID V. DUNN

 ORIGINAL

vs.

LAMSON AND GOODNOW MANUFACTURING
COMPANY and J. ROSS ANDERSON, JR.

------------------------------------------------------
          **CONTINUED DEPOSITION OF:  DAVID DUNN**
------------------------------------------------------

Taken before Joanne Coyle, Certified
Shorthand Reporter, Notary Public, pursuant
to the Federal Rules of Civil Procedure, at
the offices of Bulkley, Richardson and
Gelinas, LLP, 1500 Main Street, Springfield,
Massachusetts on OCTOBER 31, 2005,
commencing at 9:10 a.m.

Joanne Coyle
Certified Shorthand Reporter
License No. 106693

**PERLIK and COYLE REPORTING**
Certified Professional Reporters

1331 Main Street
Springfield, MA 01103
Tel. (413) 731-7931    Fax (413) 731-7451

1       Q.    I agree it does indeed say that.

2    Doesn't it say "according to the following terms

3    and conditions"?

4       A.    At the top; yes.

5       Q.    Did you provide this document to

6    either -- strike that.

7            Did you provide this document to

8    Mr. Anderson at the time of the transaction?

9       A.    I believe not.

10      Q.    Did you ever provide it to Mr. Blanker?

11      A.    I did not.

12      Q.    Did anyone ask you for any evidence that

13   Spiritual Trees had consented to the deal?

14      A.    I do not recall.

15           MR. MAYNARD:  Would you mark these

16   two next, please?

17                   (Defendant's Deposition Exhibit
                     No. 38-39 offered and marked.)
18

19      Q.    (BY MR. MAYNARD)  I've had marked as

20   Exhibits 38 and 39, Mr. Dunn, another couple of

21   documents more recently produced.

22           They are, I believe, versions of

23   invoices already incorporated as Exhibit 18 --

24   incorporated in Exhibit 18 in your depositions but

1    these have some annotations, right?

2         A.    Yes.

3         Q.    Let's start with Exhibit 38.  Is that a

4    copy of Tree Spirit commission due invoice to

5    Lamson and Goodnow dated April 16, 2000?

6    (Indicating.)

7         A.    Yes.

8         Q.    It has a handwritten annotation.  Would

9    you read that for me, please?

10         A.    "Voucher ID 03869 4/28/00.

11         Q.    The last being the date, April 28th,

12    2000?

13         A.    Correct.

14         Q.    Whose handwriting sit?

15         A.    I believe it is mine.

16         Q.    Do you have the original document --

17    that is, a document with the original annotation?

18         A.    I believe that document is in Lamson's

19    files.

20         Q.    We'll get to why you believe that's the

21    case in a moment.  When was this annotation made?

22         A.    I do not know.

23         Q.    Was it made on or around the

24    twenty-eighth of April, 2000?

1      A.    I do not know.  I do not know if that

2  was the date it was processed, the date that I

3  took the information -- or the date that I took

4  the information down.

5      Q.    You say took the information down?

6      A.    Yes.

7      Q.    What do you mean by that, took it down

8  from what?

9      A.    Recorded the voucher ID number.

10      Q.    Where did you get that information?

11      A.    I believe Sue Atherton.

12      Q.    Let me back up, then.  When, in terms of

13  your submitting this invoice, did you get that

14  information from Sue Atherton?

15      A.    You'll have to repeat that question.

16      Q.    Sure; did you get that voucher number

17  from Sue Atherton?  Let's start there.

18      A.    I've already answered that; yes.

19      Q.    Did you get it within minutes, hours,

20  days of having submitted to her the invoice?

21      A.    I do not know.  I do not remember.

22      Q.    Was it more than months?

23      A.    I do not remember.  I believe it was

24  before the June date.

1    Q.    What's the June date you're referring

2    to?

3    A.    The June date where Anderson and I

4    agreed on the stock.

5    Q.    How did you receive the voucher number

6    from Ms. Atherton when you did get it?  Verbally?

7    By e-mail?  In writing?

8    A.    It would be natural to assume that it

9    was verbally.

10    Q.    Tell me a bit about the voucher ID

11    system that was in place in 2000.

12          How were voucher ID numbers assigned and

13    why?

14    A.    As I recall, every single invoice that

15    was processed in the system receives its own

16    unique identification number.

17    Q.    Okay.

18    A.    And I did not have access to the

19    computer systems at that time so I would have had

20    to have relied on someone else to give me that

21    information.

22    Q.    Once an ID number is assigned, can it be

23    assigned to any other invoice?

24    A.    I believe that it's a unique identifier.

1    Q.    Once the identifier has been assigned,

2    can it be unassigned?

3    A.    I do not know the answer to that.

4    Q.    Do you know whether these voucher ID

5    numbers were assigned sequentially, such that for

6    example the next invoice received by Lamson and

7    Goodnow after Exhibit 38 would be given the number

8    03870?

9    A.    From my experience; yes.

10    Q.    As far as you are aware of the system

11    and know the system that was in place in 2000,

12    what evidence would Lamson and Goodnow have of

13    this voucher number and to what invoice it was

14    assigned?

15            MS. RAPINCHUK:  Objection.

16            THE WITNESS:  I believe that in the

17    computer systems of Lamson and Goodnow there

18    resides a line item for this invoice number -- or

19    for this voucher ID that corresponds to this

20    invoice.

21            Whether that is still there or not, I

22    have no idea.

23    Q.    (BY MR. MAYNARD)  You said that you

24    believe the original of this document -- that is

1    the document with your original annotation -- lies

2    with Lamson and Goodnow?

3         A.    I need to correct myself.  I'm not sure

4    whether the original is there or not.

5         Q.    Do you know whether you have the

6    original?

7         A.    I have a copy that I wrote those numbers

8    on and I'm not sure if it's an original or a

9    photocopy.  I don't remember.

10        Q.    When I say original, I'm talking about

11   presumably a copy of the invoice but with your

12   original handwriting?

13        A.    I'm not sure whether it's original or

14   photocopy.  I forgot.

15        Q.    Did you ever give your original

16   handwritten one to anyone else?

17        A.    I don't remember.

18        Q.    Did you make that annotation sometime in

19   the year 2000?

20        A.    Without question, as I testified

21   previously, I believe I made it before June of

22   2000.

23        Q.    But beyond that, you don't know whether

24   you made that annotation on the day you learned of

1    the voucher ID number, is that fair?

2        A.    That's correct.

3        Q.    Does the date 4/28/00, does that trigger

4    any memory of what occurred, if anything, on that

5    date?

6        A.    No.

7        Q.    You don't understand that to be, for

8    example, the date the ID number was assigned?

9        A.    I would be speculating to say yes to

10   that question.

11       Q.    And you don't know whether that's the

12   date on which you were given the voucher ID

13   number?

14       A.    That's correct.

15       Q.    And don't know whether that's the date

16   on which you in fact submitted the invoice?

17       A.    No; this information is available.  It's

18   in the computer system.

19             You're asking me questions that Lamson

20   and Goodnow should know.

21       Q.    So whatever is in the computer system

22   with respect to this voucher ID is the true state

23   of affairs?

24       A.    Yes -- as far as I know.

1      Q.    Take a look at Exhibit 39. (Indicating.)

2      A.    (Witness examining document.)

3      Q.    Do you have any recollection of making

4   this notation?

5      A.    No.

6      Q.    Are your answers the same with respect

7   to this document in terms of the significance of

8   the notation -- that is, it references a voucher

9   ID number that you learned was assigned with

10  respect to this invoice?

11     A.    That's correct.

12     Q.    Did you learn that from Ms. Atherton?

13     A.    I believe so; yes.

14     Q.    Did you have any recollection of how you

15  learned it from her?

16     A.    I believe she would have given it to me

17  verbally.

18          It could have also included -- I'll

19  correct myself -- Kathy Roberts, who was also an

20  accounts payable clerk at the time.

21     Q.    This notation bears the voucher ID

22  number 04171, right?

23     A.    That is correct.

24     Q.    And bears the date of May 18th, 2000,

1    right?

2         A.    Yes.

3         Q.    Does that date reference jog any

4    recollection of any event on that date?

5         A.    No.

6         Q.    Again, you don't know whether that's the

7    date you learned of the ID number, whether that's

8    the date it was assigned, or whether that's the

9    date you submitted this invoice or anything else?

10        A.    No.

11        Q.    As you testified with respect to

12   Exhibit 38, it's your testimony that the Lamson

13   and Goodnow computer system would contain

14   information relating to voucher ID number 04171?

15        A.    The system should; yes.

16        Q.    Just to complete kind of the triumvirate

17   of invoices, let me have marked this as

18   Exhibit 40.

19                    (Defendant's Deposition Exhibit
                      No. 40 offered and marked.)
20

21        Q.    (BY MR. MAYNARD)  Exhibit 40 is the

22   commission invoice due June 5th, 2000 which is

23   also part of Exhibit 18, but just to keep things

24   neat, I'll mark it as a separate exhibit as well.

SIGNATURE PAGE - ERRATA SHEET

        To be signed by deponent and returned to counsel within thirty (30) days.

        I, the undersigned, DAVID DUNN, do hereby certify that I have read the foregoing transcript of my testimony given in the matter of SPIRITUAL TREES ET AL vs. LAMSON AND GOODNOW ET AL, on OCTOBER 31, 2005 and that, to the best of my knowledge, said transcript is true and accurate (with the exception of the following corrections listed below:)

PAGE : LINE:  CHANGE AND REASON

| 14 | 4 | change to exchange. |
| 14 | 6 | Change to exchange. |
| 21 | 24 | Would have involved FICA and other expenses. |
| 27 | 11 | I do not believe I did. |
| 29 | 18 | ; I believe yes |
| 33 | 24 | ; unless they have altered or reorganized their database. |
| 35 | 15 | yes, unless they altered or reorganized their database. |
| 39 | 3 | Yes, I believe she signed it in my presence. |
| 41 | 3 | all I know is a copy of it was made. |

DEPONENT'S SIGNATURE: _David V. Dunn_____
                                            David V. Dunn

Signed under the pain and penalties of perjury this _1st_ of _December_____ , 2005.

_____
NOTARY PUBLIC

My Commission expires: _____

ORIGINAL

**PERLIK and COYLE REPORTING**

# EXHIBIT F

BULKLEY, RICHARDSON AND GELINAS, LLP

**BR&G**
SPRINGFIELD   BOSTON

LAW OFFICES
1500 MAIN STREET, SUITE 2700
POST OFFICE BOX 15507
SPRINGFIELD, MA 01115-5507

TEL:  (413) 781-2820
FAX:  (413) 272-6804

KEVIN C. MAYNARD
DIRECT DIAL (413) 272-6244
KMAYNARD@BULKLEY.COM

November 2, 2005

**<u>BY HAND</u>**
Patricia M. Rapinchuk, Esq.
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, MA  01115-5609

Re:   Spiritual Trees, d/b/a Tree Spirit and David V. Dunn vs.
       Lamson and Goodnow Manufacturing Company and J. Ross Anderson, Jr.
       Civil Action No. 04-30102-KPN

Dear Pat:

      I left a voice mail message with you yesterday, hoping we could discuss in advance the matters raised below.  I have not yet heard back from you.

      As you undoubtedly saw from the payables documents included in my letter to you dated October 31, 2005, the voucher numbers identified by Mr. Dunn as those assigned to his Tree Spirit invoices dated April 16, 2000 and May 9, 2000 were in fact assigned by Lamson and Goodnow to other invoices from other vendors.  Investigation has further revealed that neither Tree Spirit nor Spiritual Trees, Inc. was ever entered as a vendor in Lamson and Goodnow's payables system, and that no voucher id number was ever assigned to any Tree Spirit invoice.

      Further, I have spoken with Susan Atherton and Kathy Roberts about Mr. Dunn's testimony regarding the events surrounding these alleged Tree Spirit commission invoices, including his assertions that he gave the invoices to one of them, and that one of them informed him of the voucher id numbers assigned.  Ms. Atherton and Ms. Roberts will each testify that she never saw the alleged invoices, and never assigned a voucher id number to either of them.  Indeed, Ms. Roberts says she doesn't even know what a voucher id number was or is, as she had no involvement with accounts payable while she was at Lamson and Goodnow.

      Ms. Atherton will also testify with respect to the alleged invoice dated June 5, 2000, which Mr. Dunn has testified was signed by her as acknowledgement of receipt.  Ms. Atherton will testify that she never saw the alleged invoice.  She will testify that, although the photocopied signature on the copy of the document produced by your clients in discovery looks like hers, she never signed this invoice.  She suspects her signature was photocopied from another document.  Indeed, she will testify that she never signed **any** invoice during her tenure at Lamson and Goodnow.

BULKLEY, RICHARDSON AND GELINAS, LLP

Patricia M. Rapinchuk, Esq.
November 2, 2005
Page 2

These and other facts and circumstances lead us, unfortunately, to the reasonable
suspicion that these and perhaps other documents produced by your clients in the case have been
created or manufactured in a manner other than that to which Mr. Dunn has testified.  That
suspicion has been most recently triggered by Mr. Dunn's belated disclosure of the documents
on which he wrote the voucher id numbers at issue, and his testimony on October 31 regarding
them.

Defendants hereby request the immediate opportunity to view on Mr. Dunn's
computer(s), with a computer forensics specialist, whatever electronic versions exist of the
following:

1.    Commission Due Invoice dated April 16, 2000 (Exh. 38 to David Dunn
      deposition);
2.    Commission Due Invoice dated May 9, 2000 (Exh. 39 to David Dunn deposition);
3.    Commission Due Invoice dated June 5, 2000 (Exh. 40 to David Dunn deposition);
4.    E-mail from David Dunn to Ross Anderson dated April 17, 2002 (Exh. 14 to
      David Dunn deposition);
5.    Attachments to the e-mail described at No. 4 above, namely "All Tree Spirit
      Product Sales.snp" and "All Sales by Product Report.snp."

The electronic versions of these documents are responsive to defendants' original
document requests, given the definition therein of "documents."  The circumstances now compel
us to examine any electronic version of what your clients have produced.  Defendants reserve the
right to request access to electronic versions of additional documents produced in discovery and
supposedly created and sent during Mr. Dunn's tenure at Lamson and Goodnow.

If we cannot agree quickly to a date, time and manner by which this request will be
satisfied, we intend to seek an immediate court order.

I look forward to hearing from you promptly.

                                              Very truly yours,

                                              Kevin C. Maynard

KCM/cmc

cc:    J. Ross Anderson, Jr.



Patricia M. Rapinchuk, Esq.                                    prapinchuk@robinson-donovan.com

November 9, 2005

HAND DELIVER

Kevin C. Maynard, Esq.
Bulkley Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA 01115

     RE:    Spiritual Trees d/b/a Tree Spirit and David V. Dunn
              vs. Lamson and Goodnow Manufacturing Company and J. Ross Anderson, Jr.
              United States District Court
              Civil Action No.:  3:04-CV-30102-KPN

Dear Kevin:

I write in response to your letters dated November 2, 2005 and November 3, 2005, and also to address issues raised by the documents which you produced after David Dunn's deposition on October 31, 2005. The payables documents which were produced raise more questions than they answer. As you are undoubtedly aware, in the first page of the two sets of documents, entitled "PAYABLE_DIST: Table", which I attach for purposes of clarity, the two voucher ID numbers identified by David Dunn do not appear in the sequence. The posting dates for the voucher ID numbers before and after the missing voucher ID number are consistent with the invoice dates produced by Mr. Dunn. Although the additional tables include the missing voucher numbers, there is no information on those tables indicating when those voucher numbers were assigned, to whom they were assigned, or any other identifying information. Mr. Dunn informs me that there should be a master table, possibly called a "Master Payable Table" or "Payable Table," and that the documents which you produced are sub-tables of that master table. It appears from the documents that you produced to us that the original voucher ID numbers assigned to the Tree Spirit invoices were deleted and reassigned to other invoices at a later date. By this letter, I am requesting that you produce the master tables for the voucher ID numbers in question, which should include information such as invoice date, invoice number, amount of invoice, the person who entered the invoice, and the vendor IDs. Also, please provide us with detail information on

413319

November 9, 2005
Page 2

the tables which listed the voucher numbers in question, including the dates of the invoices, when the voucher numbers were assigned and the vendor identification.

Under the circumstances, it will also be necessary to depose Tony Ostroski, or another person from Lamson with the most knowledge about the documents in question. Please advise me of who that person might be and provide me with available dates for deposition.

With regard to your assertion that neither Tree Spirit nor Spiritual Trees, Inc. were ever entered as vendors in Lamson and Goodnow's payable system, we know this not to be true. As you are aware, both parties have produced several checks that were issued to Tree Spirit from the Lamson and Goodnow software system. Although my client admits that he did not have access to Lamson's computer system at the time that most of those checks were issued, and that there may be something about the system at that time of which he is unaware, his understanding is that Tree Spirit must have been listed as a vendor in the system in order for those checks to have been issued. As a result, we are requesting the Vendor Table or the Vendor List from the time frame in question.

With regard to your assertion that both Susan Atherton nor Kathy Roberts have stated that they never saw the alleged invoices and never assigned a voucher ID number to either of them, we have never asserted that any individual assigned the voucher ID numbers. Rather, the voucher ID numbers are assigned by the system at the time that an invoice is entered into the system. Documents have been produced which indicate that Ms. Roberts did, at least occasionally, make entries into the Accounts Payable system. Also, it is not surprising that neither of these individuals recall having seen three particular invoices that were submitted over five years ago among the thousands of invoices that have passed through the office.

David Dunn denies that he falsified Ms. Atherton's signature in any way, either by photocopying, forgery or any other method. Ms. Atherton has absolutely no basis for her "suspicion" regarding the signature in question. Again, it is not surprising that she may not have recalled signing this particular document. While Mr. Dunn admits that it was not her usual practice to sign an invoice, he asked her to sign this particular invoice to acknowledge receipt because he knew it was not going to be entered into the system.

Your asserted suspicion is not reasonable. With regard to your assertion that the suspicion was most recently triggered by Mr. Dunn's "belated disclosure of the documents on which he wrote the voucher ID numbers," you will recall that Mr. Dunn testified in both days of his deposition in April and May, 2005, that he had the voucher numbers. We never anticipated that Lamson would deny that the invoices were entered into the system, so we never believed that the voucher numbers were necessary or relevant. Once that was made apparent, Mr. Dunn searched his files and located the documents which identify the voucher numbers. They were then produced to you, along with a number of other documents, once they were located. The issues in this case have grown far beyond anything that we originally expected, to the point where documents that were not originally viewed as relevant have now, arguably, become so. We have timely produced extensive documentation, both in our Automatic Disclosure and our Response to Request for Production of Documents. We have not refused to produce any relevant documents, nor have we been slow to produce them.

November 9, 2005
Page 3

The same cannot be said for Lamson. As you know, David Dunn was presented with documents in his first deposition that had not been produced by you, despite the fact that Lamson had already completed its Automatic Disclosure, and had responded to our document requests. Also, Lamson produced a substantial amount of documents, which were long overdue, <u>after</u> you resumed David Dunn's deposition. If late disclosure is an issue with any party, it is an issue with Lamson.

Regardless, I will address your specific requests to view items on Mr. Dunn's computer with a computer forensic specialist as follows:

1 through 3 -- Mr. Dunn has no electronic version of any of the three invoices listed in your letter. Those invoices were created in 2000 on a computer that no longer exists. Those electronic documents were never saved and/or transferred to any subsequent computer. Instead, Mr. Dunn retained copies of those invoices for his files.

4 and 5 -- Mr. Dunn does have an electronic version of the e-mail dated April 17, 2002, with the two attachments. Those documents have been produced to you exactly as they exist on his computer. You have been aware of the existence of those documents for nearly a year, as they were produced in response to your Request for Production of Documents in December, 2004, and the reports produced from the attachments were produced as part of our automatic disclosure. Also, in his deposition earlier this year, Mr. Dunn was questioned in detail about those documents.

With regard to the request in your November 3rd letter, please be advised that Mr. Dunn has searched his e-mail files and he does not have an e-mail from Sue Atherton.

As you are aware from the deposition of David Dunn, he no longer possesses the computer which he used in 2002. The files that exist on his current laptop are files that were transferred from another computer. Also, all of the documents created by Mr. Dunn during his employment at Lamson should be on that computer or part of backup files on Lamson's server(s).

In addition, Mr. Dunn's current laptop contains substantial information that is irrelevant to this matter, privileged, and personal and confidential, and we are not inclined to turn the laptop over to you for inspection.

It is unclear to me exactly what you wish your computer forensic specialist to view, and you also have not designated an expert witness, although the time for doing so has expired.

Please contact me to discuss these matters.

Very truly yours,

Patricia M. Rapinchuk

PMR/jva - Enclosures
cc:  David V. Dunn



**BULKLEY, RICHARDSON AND GELINAS, LLP**

LAW OFFICES
1500 MAIN STREET, SUITE 2700
POST OFFICE BOX 15507
SPRINGFIELD, MA 01115-5507

TEL:  (413) 781-2820
FAX:  (413) 272-6804

KEVIN C. MAYNARD
DIRECT DIAL (413) 272-6244
KMAYNARD@BULKLEY.COM

December 1, 2005

**BY HAND DELIVERY**

Patricia M. Rapinchuk, Esq.
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
P.O. Box 15609
Springfield, MA  01115-5609

> Re:    Spiritual Trees, d/b/a Tree Spirit and David V. Dunn
> vs.    Lamson and Goodnow Manufacturing Company and J. Ross Anderson, Jr.
>          Civil Action No. 04-30102-KPN

Dear Pat:

I write in response to your letter dated November 9, 2005 after further investigating some of the matters you addressed in that letter.  After that further investigation I am as convinced as before that your clients have attempted to manufacture evidence in the case.

The "Master" payables data table of which Mr. Dunn speaks (evidencing his substantial familiarity with the relevant program by the way) is known simply as the Payables Table.  There are four other data tables created from the data entered:  Payables Distribution, Payables Lines, Payables Currency and Payable Lines Currency.  Those four tables were enclosed in my prior correspondence.  Enclosed is the portion of the Payables Table including Voucher ID numbers 2940 through 4343.  The table includes data related to the headings across the top of the first page.

As you see, the Voucher ID numbers your client says were assigned to the Tree Spirit invoices at issue, No. 03869 and No. 04171, are not included on the Payables Table, just as they were not included on the Distribution and Lines Tables previously provided.  Those numbers **were** assigned to certain invoices, however, as indicated by their inclusion on the Payables Currency and Payables Line Currency tables previously provided.  Further copies of those tables are enclosed.

When invoices are entered into the system, a Voucher ID is created and relevant data is embedded in each of the available data tables.  From the "Create Date" on the master Payables table relating to Voucher ID numbers coming before and after 03869 and 04171 ("Create Date" is not included on the Currency tables), one can see that Voucher ID number 03869 was assigned during the period 4/28/00 – 5/01/00, and 04171 was assigned on 5/12/00.  A Voucher ID may be deleted

BULKLEY, RICHARDSON AND GELINAS, LLP

Patricia M. Rapinchuk, Esq.
December 1, 2005
Page 2

before the corresponding payable is posted to the general ledger. Such a deletion would be reflected in a removal of the relevant information from the Payables Table, and a resulting "gap" in Voucher ID numbers. Deletion from the Payables Table in 2000 did not delete all data, however, because versions of the program then in use did not delete data from the Currency or Currency List tables. (Note the absence of gaps in numbers on the currency tables.) The omission of the relevant Voucher ID numbers from the Payables Table and inclusion on the Currency and Currency Lines Tables indicates that the vouchers were assigned and then deleted from the system before they were posted to the general ledger. Contrary to a suggestion otherwise in your letter, Voucher ID numbers cannot be reused or reassigned once they are deleted. Thus, we can establish that the Voucher ID numbers identified by your client were assigned only to invoices other than those supposedly from Tree Spirit, given the amounts invoiced. As shown on the Currency tables, the amount actually invoiced by the invoice assigned voucher ID 03869 was $91.84. The amount invoiced by the invoices actually assigned Voucher ID 0417 was $908.08. The purported Tree Spirit invoices were for substantially larger sums.

Because the identity of the vendor is not among the data included on the Currency Tables, Lamson & Goodnow has not yet identified the vendors that issued the invoices to which Voucher ID numbers 03869 and 04171 were in fact assigned. My client is attempting to locate those invoices manually, however, and I will apprise you of the identity of the vendors if and when the invoices are located, and will provide copies of the invoices once discovered.

I was incorrect in my November 2, 2005 letter when I stated that Tree Spirit had never been entered as a vendor in the system. As you correctly note, it was. (See, e.g., Voucher ID No. 3561 on the enclosed Payables Table.) However, Spiritual Trees, Inc. was **not** entered as a vendor. Moreover, Spiritual Trees, Inc. was never identified in the system as a payee under the vendor status of Tree Spirit, notwithstanding that the purported Tree Spirit invoices instruct that payment be made to Spiritual Trees, Inc.

A search of all Payables data entered in the period February 1 – June 1, 2000 indicate that no invoice was ever entered in an amount matching the amount on any of the purported Tree Spirit invoices.

Simply put, the purported Tree Spirit invoices were never entered into the system. The Voucher ID numbers identified by Mr. Dunn as having been assigned to those invoices (and written in his hand on copies of those invoices produced suspiciously late in the litigation) were in fact assigned to other unrelated invoices, and could not have been reassigned or reused.

Regarding the reported recollections of Ms. Atherton and Ms. Roberts, we are comfortable letting a trier of fact decide any issues of credibility. To be clear, my understanding is that this is not a case where each of Ms. Atherton and Ms. Roberts fails to recall whether or not she informed

BULKLEY, RICHARDSON AND GELINAS, LLP

Patricia M. Rapinchuk, Esq.
December 1, 2005
Page 3

Mr. Dunn of the Voucher ID numbers he says were assigned, as he testified one of them did. Rather, each affirmatively recalls that she did not do so, and never saw the purported invoices. Further, I understand that Ms. Atherton clearly recalls that she did not sign the third purported invoice, as Mr. Dunn says she did.

We continue to assess whether or not to press our request for an examination of Mr. Dunn's electronic version of the April 17, 2002 e-mail and its attachments. I understood the response in your November 9 letter to be a denial of that request. Please correct me if I read it wrongly.

We will not produce Mr. Ostroski or any other person to be deposed regarding Lamson & Goodnow's computer system. Your client has been in possession of the purported invoices with the purported Voucher ID numbers noted for as long as they have existed. You had every opportunity before the discovery deadline in the case to depose a Lamson & Goodnow representative regarding the system by which such numbers were assigned, maintained, reported, etc. You cannot credibly argue, as you state in your November 9 letter, that you and your clients "never anticipated that Lamson would deny that the invoices were entered into the system…" Mr. Anderson testified in deposition on June 10, 2005, as follows:

Q:    And it's your testimony that they [the invoices] were never entered into your accounting system?
A.    That's correct.

(Transcript, 110: 13-15).

Finally, be assured we do not take lightly a suggestion that your clients have manufactured evidence. We fully appreciate the seriousness of the suggestion. Please note that we intend to prove the matter and to seek all appropriate remedies, including a recovery of attorneys' fees and other possible sanctions, upon the conclusion of this case.

Very truly yours,

Kevin C. Maynard

KCM/cmc
Encls.

cc:    Scott Foster, Esq. (w/o encls.)
        Ross Anderson (w/o encls.)