UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 3:04-CV-30102-KPN

SPIRITUAL TREES d/b/a TREE SPIRIT )
and DAVID V. DUNN                  )
                    Plaintiffs     )
                                   )
v.                                 )
                                   )
LAMSON AND GOODNOW                 )
MANUFACTURING COMPANY and          )
J. ROSS ANDERSON, JR.,             )
                    Defendants     )


DEPOSITION OF: J. ROSS ANDERSON, JR., taken before Sharon R. Roy, Notary Public Stenographer, pursuant to Rule 30 of the Massachusetts Rules of Civil Procedure, at the law offices of ROBINSON DONOVAN, P.C., 1500 Main Street, Suite 1600, Springfield, Massachusetts on June 10, 2005, commencing at 10:04 a.m.


A P P E A R A N C E S:

(See Page 2)


Sharon R. Roy
Certified Shorthand Reporter
Registered Professional Reporter

```
 1         credit card?
03:22:48  2         A.   I did not know.
03:22:49  3         Q.   Do you know whether he ever had a Lamson
          4   credit card?
03:22:52  5         A.   I do not know.
03:23:08  6         Q.   Have you obtained any statements from any
          7   employees of Lamson regarding any of the matters that
          8   are at issue in this litigation?
03:23:20  9         A.   Yes.
03:23:21 10         Q.   From whom?
03:23:22 11         A.   Marcia Tetreault, Tony Ostroski, Brian
         12   Koshinsky.  I think from Kurt also.  That might be
         13   it.
03:23:50 14         Q.   Are these written statements?
03:23:54 15         A.   Typed out.
03:23:56 16         Q.   Were they recorded in any way other than in
         17   writing?  In other words, on audio tape or video
         18   tape?
03:24:05 19         A.   No, just in writing.
03:24:06 20         Q.   Did the individuals that you just named
         21   prepare their own statements?
03:24:08 22         A.   Yes.
03:24:08 23         Q.   When did you obtain those statements?
03:24:16 24         A.   Immediately following the whole incident.
```

```
03:24:19  1      Q.   What do you mean by immediately?
03:24:21  2      A.   Within the next few days.
03:24:24  3           MR. MAYNARD:  Pat, can I just confer
          4      quickly with my client?  I think I know what
          5      he has in mind, but I don't want to go down
          6      the wrong path and lead you astray.
03:24:35  7           MS. RAPINCHUK:  Okay.
03:24:57  8      Q.   (By Ms. Rapinchuk)  So we're back on the
          9      record.  You just conferred with your attorney.  Do
         10      you have anything to change or add to your testimony?
03:25:02 11      A.   No.  And my own written statement as well.
03:25:09 12      Q.   When did you prepare your own written
         13      statement?
03:25:13 14      A.   I would say it was probably the next day.
03:25:17 15      Q.   And who has custody of the written
         16      statements that you've just described?
03:25:30 17      A.   I do.
03:25:36 18      Q.   Can you tell me the substance of Marcia
         19      Tetreault's statement?
03:25:41 20      A.   I don't recall.
03:25:42 21      Q.   Well, you must recall some of it.  What is
         22      it that she has to say that you believe is pertinent
         23      to this matter?
03:25:51 24      A.   She remembers me asking David to please
```

```
 1   leave the computer several times.  I don't remember
 2   what else.
 3        Q.   To the best of your knowledge, does Marcia
 4   Tetrault's statement primarily involve the events of
 5   March 29?
 6        A.   Yes.
 7        Q.   Do you know whether her statement concerns
 8   any other events other than those that occurred on
 9   March 29?
10        A.   She may have talked about a meeting she had
11   with David in the morning.
12        Q.   Of that same day?
13        A.   Or early afternoon.  I forget what the time
14   is.
15        Q.   Do you remember what she said about that
16   meeting?
17        A.   David apprised her for the first time that
18   she had ever heard about these commissions.  And that
19   he told her, "If I bring this up, I'm going to get
20   fired today."
21        Q.   Do you remember anything else about what
22   she put in her statement?
23        A.   No.
24        Q.   How about Tony Ostroski, what is the
```

1    substance of his written statement?

03:27:07  2        A.   I think he was mostly -- if I remember

3    right, he mostly visually saw what went on.

03:27:14  4        Q.   On March 29?

03:27:15  5        A.   On March 29.

03:27:18  6        Q.   So it was a written description of what he

7    observed?

03:27:20  8        A.   He observed, yes.

03:27:22  9        Q.   Do you know whether there was -- whether

10   there's anything in Tony Ostroski's statement other

11   than his observations on March 29, 2004?

03:27:32 12        A.   I don't recall anything else.

03:27:34 13        Q.   How about Brian Koshinsky, what is the

14   substance of his written statement?

03:27:40 15        A.   I believe it's also observations of what he

16   saw.

03:27:42 17        Q.   On March 29?

03:27:43 18        A.   Correct.

03:27:44 19        Q.   Do you remember what his statement said?

20   What did he observe?

03:27:50 21        A.   I don't remember without rereading it, to

22   be honest with you.

03:27:56 23        Q.   And do you believe that Kurt Zanner also

24   provided a statement?

| | | |
|---|---|---|
| 03:27:59 | 1 | A.   I think so, if I remember right. |
| 03:28:00 | 2 | Q.   You're not sure? |
| 03:28:02 | 3 | A.   No.  It goes back a year ago.  I don't |
| | 4 | remember. |
| 03:28:08 | 5 | Q.   How about the substance of Kurt Zanner's |
| | 6 | statement? |
| 03:28:13 | 7 | MR. MAYNARD:  Well, he's not sure |
| | 8 | there is one. |
| 03:28:15 | 9 | A.   Yeah, I don't remember that. |
| 03:28:16 | 10 | Q.   You're not sure if there is one? |
| 03:28:17 | 11 | A.   I don't remember.  I'd have to look it up. |
| 03:28:20 | 12 | MR. MAYNARD:  Pat, I just want to |
| | 13 | make sure there's no confusion on the record |
| | 14 | here.  I think the witness may not be |
| | 15 | understanding the term "statement" as you or |
| | 16 | any other lawyer might understand the term |
| | 17 | "statement." |
| 03:28:30 | 18 | MS. RAPINCHUK:  Well, I'll ask him a |
| | 19 | little bit about that, then. |
| 03:28:34 | 20 | Q.   (By Ms. Rapinchuk)  What type of statements |
| | 21 | are these? |
| 03:28:38 | 22 | A.   Written statements. |
| 03:28:39 | 23 | Q.   And each witness prepared a statement on |
| | 24 | their own? |

```
03:28:41  1        A.   Yes.
03:28:42  2        Q.   Did you go around and ask them to prepare a
          3   written statement about what they observed?
03:28:47  4        A.   Yes.
03:28:48  5        Q.   And did they sign the statements?
03:28:52  6        A.   I recall one did.  I'm not sure that the
          7   others did.
03:28:56  8        Q.   These weren't situations where someone was
          9   sitting down interviewing these people and taking
         10   statements?
03:29:02 11        A.   No.
03:29:03 12        Q.   They just did it on their own computers?
03:29:05 13        A.   Yes.
03:29:05 14        Q.   And then submitted them to you?
03:29:07 15        A.   They gave me a copy.
03:29:08 16        Q.   Does that fairly describe the type of
         17   statements that we're talking about here?
03:29:11 18        A.   Yes.
03:29:11 19        Q.   And you said you also prepared a statement,
         20   correct?
03:29:14 21        A.   Correct.
03:29:15 22        Q.   I think you said the next day you prepared
         23   yours?
03:29:17 24        A.   Correct.
```