UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-30102-KPN

| | |
|---|---|
| SPIRITUAL TREES d/b/a TREE SPIRIT and DAVID V. DUNN,<br>    Plaintiffs | )<br>)<br>)<br>) |
| vs. | )<br>) |
| LAMSON AND GOODNOW MANUFACTURING COMPANY and J. ROSS ANDERSON, JR.,<br>    Defendants | )<br>)<br>)<br>)<br>) |

## JOINT PRE-TRIAL MEMORANDUM

**(1)  CONCISE STATEMENT OF THE EVIDENCE THAT WILL BE OFFERED**

**A.  By the Plaintiffs**

The evidence will show that, in January, 2000, Spiritual Trees, Inc. d/b/a Tree Spirit ("Tree Spirit") entered into an agreement with Lamson and Goodnow Manufacturing Company ("Lamson") whereby Lamson agreed to purchase most of the assets of Tree Spirit. Tree Spirit was, at that time, a corporation whose President and sole owner was David Dunn ("Dunn"). The defendant, J. Ross Anderson, Jr., ("Anderson") was the Chairman/CEO of Lamson. Tree Spirit was in the business of selling various kitchenware products, including wooden products under the name "Spiritual Trees," "Tree Spirit," and "Amish Woods."

On or about February 1, 2000, Dunn and Anderson, on behalf of Tree Spirit and Lamson, executed a contract setting forth the terms of the sale. The contract provided for the purchase of inventory at cost, the purchase of Intellectual Property Assets and consultation services to be provided by Dunn for $12,500, the purchase of a shrink wrap machine for $1,000 and the purchase of all other assets for $12,500. In addition, the contract provided that Tree Spirit would receive a commission equal to 4% of gross sales for all items acquired by Lamson. The plaintiffs

417016

expect the evidence to show that the items acquired by Lamson included various product lines, which included the Tree Spirit products and Amish Woods products. The contract provided that Lamson would pay a late fee of 1 ½ % per month on any commissions not paid by the due date. The contract also provided that it could not be amended, terminated, waived or rescinded except pursuant to a written agreement duly executed by the parties.

The evidence will show that Tree Spirit and Dunn performed all of their obligations under the contract and that Lamson paid Tree Spirit for the various assets listed in the contract, with the exception of commissions.

In April, 2000, completely unrelated to the contract, Anderson hired Dunn to work as an employee of Lamson for a salary. Dunn accepted the job offer and worked for Lamson for nearly four years, during which time he received raises and promotions and was ultimately appointed President of the company. He also received bonuses, based on a bonus calculation which was drawn up by Anderson. The evidence will show that these bonuses were accrued by the company as expenses on a regular basis and were regularly paid as promised.

When Dunn began working for Lamson, he quickly became aware that the company had a cash flow problem and that payment of the Tree Spirit commissions at that time would increase that problem. Dunn discussed the situation with Anderson on more than one occasion. Anderson also discussed with Dunn the fact that he hoped to retire and take a less active role in Lamson in the near future and that he was looking to create a succession plan. He advised Dunn that he intended to work on a plan that would provide Dunn with stock ownership in the company. Dunn verbally agreed to defer Tree Spirit's rights to commissions during the time that he was employed by Lamson, and also agreed to waive the commissions completely if a satisfactory plan for stock ownership could be reached. No such plan was ever actually

417016

presented to Dunn, and Dunn never agreed to waive the commissions. The evidence will show that the contract was never modified in writing as provided by the contract terms.

In early 2004, Dunn began to realize that Anderson's promise of stock ownership to him would most likely not occur. He became concerned that the obligation of Lamson to Tree Spirit, which had not been carried on the company's financial statements, should be reflected as it now appeared inevitable that the stock ownership would not occur.

On March 29, 2004, Lamson met with Anderson to discuss these issues. He advised Anderson that he now believed that Anderson would not be granting him any stock ownership and that, therefore, the obligation to Tree Spirit needed to be reflected in Lamson's financial statements. During that meeting, Anderson became upset and angry, told Dunn that he had waived the commissions and terminated Dunn's employment from Lamson. He also advised Dunn that he should leave the premises.

Dunn went to his work area to retrieve his belongings and to download his personal files from the company laptop. Before he could do so, however, Anderson arrived at his work station and a confrontation occurred during which Anderson told Dunn to leave the computer, Dunn told Anderson that he needed to retrieve his personal files and Anderson physically attempted to take the computer and Dunn's briefcase from him and physically attempted to restrain Dunn and to block him from leaving. Dunn ultimately left the building with the laptop, aware that someone had called the police to report that he had stolen company property. Dunn shortly thereafter saw the police cruiser and pulled over, advising the Police Chief of what had happened. An agreement was made whereby Dunn was allowed to download his personal files from the company computer at the police station, and the laptop was returned to a Lamson employee.

Shortly thereafter, and pursuant to the terms of the contract, Dunn sent a demand letter to Lamson on behalf of Tree Spirit demanding the full amount of the commissions due on the Tree

417016

Spirit product lines, together with the accrued late fees. Lamson has never paid any of the commissions or late fees to Tree Spirit. In addition, at the time that Dunn terminated, he had earned a bonus which had already been accrued on the Lamson books. Lamson never paid Dunn that bonus and terminated him in part to deprive him of that earned bonus. The plaintiffs expect the evidence to show that Anderson and Zanner advised third-parties that Dunn was terminated for theft, causing great harm to Dunn's reputation. As a result of the events of March 29, 2000, Dunn suffered great emotional distress, for which he sought treatment for a period of time.

The plaintiffs expect to show that Tree Spirit suffered damages in the amount of approximately $87,000 for commissions due, with late fees accruing at a rate of 1.5% per month. The plaintiffs also expect to show that Dunn incurred damages of $75,000 in unpaid bonuses and unspecified damages for damage to his reputation and emotional distress.

**B.     By the Defendants**

Defendants and Plaintiffs-in-Counterclaim expect the evidence to show that by an Agreement dated February 1, 2004, Lamson purchased certain assets of Spiritual Trees, Inc. The Agreement as executed included a provision that for a specified period of time, Lamson would pay Spiritual Trees commissions at a specified rate upon the sale of certain items acquired from Spiritual Trees. Pursuant to the Agreement, plaintiff Dunn provided services to Lamson as a consultant for 60 days, and was hired as a Lamson employee in early April 2000. The evidence will show that Dunn agreed, at that time, on behalf of Spiritual Trees and himself to waive any right to payments of commissions otherwise set forth in the Agreement. Dunn was first hired as Director of Operations, and subsequently became Chief Financial Officer and President.

The evidence will show that Dunn acted consistently with his express waiver for nearly four years. He did not invoice or otherwise request or demand payment during his employment. At least two third parties were informed, including one in Dunn's presence, that the commissions

417016

had been waived. No reference to any liability for commissions was noted in Lamson financial statements, relied upon by lenders and others, although Dunn was responsible for providing information contained in those statements.

The evidence will show that an March 29, 2004, after telling another employee that he might get fired for doing so, Dunn informed Lamson's Chief Executive Officer, defendant Anderson among other things, that there still existed an obligation on Lamson's part to pay commissions on sales during 2000 of certain items acquired by Lamson from Spiritual Trees, and that the obligation should be reflected on Lamson's financial statements.

The evidence will show that Anderson relieved Dunn of his duties as President as a result of that conversation and asked Dunn to leave Lamson's premises so that Anderson would consider the matter further. Dunn attempted to leave the premises with a laptop computer belonging to Lamson and containing Lamson data, documents and files. Anderson asked Dunn to leave the computer. Dunn insisted on taking it, and left the premises with it.

The evidence will show that the Buckland Police Department was called, responded, and eventually oversaw a process by which Dunn downloaded form the laptop computer files claims to be personal, and Lamson retrieved its computer.

The evidence will show that Dunn was terminated from Lamson's employ effective March 30, 2004.

The evidence will show that no assault, battery or false imprisonment was involved in the March 29, 2004 incident, as alleged.

The evidence will show that there was no obligation on the part of Lamson to pay Dunn any bonus additional to those already paid, including in 2004, as plaintiffs allege, but that bonus payments were at all times discretionary.

417016

The evidence will show that Anderson did not defame Dunn, and did not intentionally interfere with the Agreement between Spiritual Trees and Lamson, as alleged.

The evidence will also show that Lamson did not breach that Agreement, or the covenant of good faith and fair dealing implied in its employment agreement with Dunn.

With respect to the counterclaims in this case, the evidence will show that Spiritual Trees breached the Agreement by failing to convey properly to Lamson certain rights related to use of the "Tree Spirit" name, logo and website.  The evidence will also show that Dunn converted property of Lamson by diverting a check payable to Lamson in the amount of $557.16 to his own use.

The evidence will show that Dunn made an agreement with Lamson by promissory estoppel that, individually and on behalf of Spiritual Trees he had waived any right to the contested commission payments.  The evidence will further show that the plaintiffs' conduct with respect to this case constitutes an abuse of process, that Dunn has breached his fiduciary responsibilities to Lamson and to Anderson, and that both Dunn and Spiritual Trees are liable for violations of General Laws chapter 93A, §§2 and 11.

**(2)   STATEMENT OF FACTS ESTABLISHED BY THE PLEADINGS, ADMISSIONS OR STIPULATIONS**

The plaintiff, Spiritual Trees, Inc. d/b/a Tree Spirit ("Tree Spirit"), is and was, at all times herein relevant, a Vermont for profit corporation with a principal place of business at 95 Chestnut Hill, Brattleboro, Windham County, Vermont.  Prior to February 2000, it did business as "Tree Spirit."

The plaintiff, David V. Dunn ("Dunn"), is a natural person who resides at 95 Chestnut Hill, Brattleboro, Windham County, Vermont, and was, at all times herein relevant, the President and sole owner of Spiritual Trees, Inc.

417016

The defendant, Lamson and Goodnow Manufacturing Company ("Lamson"), is a Massachusetts for-profit corporation with its principal place of business at 15 Greenfield Street, Greenfield, Franklin County, Massachusetts.

The defendant, J. Ross Anderson, Jr. ("Anderson"), is a natural person who resides at 782 Colrain Road, Greenfield, Hampshire County, Massachusetts, and is the Chairman/CEO of Lamson.

On or about February 1, 2000, Tree Spirit sold certain of its assets to Lamson.

Lamson and Tree Spirit executed a contract on February 1, 2000 which contained the terms and conditions of the sale.

Pursuant to the contract, Dunn began to provide consulting services to Lamson.

On or about April of 2000, Lamson hired Dunn as an employee and Dunn continued to work for Lamson, eventually becoming President of the company.

In March of 2004, Lamson terminated Dunn from employment.

**(3)     CONTESTED ISSUES OF FACT**

Whether Lamson performed its obligations pursuant to the contract.

Whether Spiritual Trees performed its obligations under the contract.

Whether Dunn waived any rights under the contract.

Whether Lamson owes a bonus to Dunn.

Whether Lamson owes Spiritual Trees commissions and late fees pursuant to the contract.

Whether Lamson and Anderson breached an implied covenant of good faith and fair dealing.

Whether Anderson intentionally interfered with the Tree Spirit contract with Lamson.

Whether Anderson committed an assault and battery on Dunn.

417016

Whether Anderson falsely imprisoned Dunn.

Whether Anderson defamed Dunn.

Whether Anderson's agent defamed Dunn.

Whether Dunn and Spiritual Trees are bound by promissory estoppel to have waived rights under the Agreement.

Whether Dunn converted property of Lamson and Goodnow.

Whether Dunn breached his fiduciary duties to Lamson and Goodnow or to Anderson.

Whether the conduct of Dunn and Spiritual Trees constitute abuse of process.

Whether the conduct of Dunn or Spiritual Trees constitutes unfair or deceptive acts or practices are in violation of General Laws, chapter 93A, §§2 and 11 and, if so, whether the violation was willful.

Whether and in what amount Dunn or Spiritual Trees has been damaged as a result of conduct of Anderson or Lamson and Goodnow.

Whether and in what amount Anderson or Lamson and Goodnow have been damaged as a result of conduct of Dunn or Spiritual Trees.

**(4)    JURISDICTIONAL QUESTIONS**

None.

**(5)    QUESTIONS RAISED BY PENDING MOTIONS**

Defendants filed on December 15 a motion to compel production of electronic versions of a certain e-mail communication produced only in printed form, why which defendants seek to find the electronic communication and data embedded therein.  Plaintiffs filed no opposition.

417016

**(6)    ISSUES OF LAW, INCLUDING EVIDENTIARY QUESTIONS, TOGETHER WITH SUPPORTING AUTHORITY**

**Plaintiffs' View on Issues of Law**

The plaintiffs have only recently been shown copies of defendants' exhibits and anticipate that they may need to file Motions in Limine after a thorough review. In addition, the plaintiffs were presented on December 29, 2005, with several documents, including a disc containing hundreds of e-mails, that they have not yet had an opportunity to review. The plaintiffs reserve the right to add additional exhibits to their list after that review.

The plaintiffs contend that the contract in question is clear and unambiguous, that parole evidence should not be admitted and that the contract should be construed by the court, and not by the jury. Even if the court finds that the entire contract is not clear and unambiguous, the plaintiffs contend that paragraph 14 is clear and unambiguous with regard to the requirement that any amendments, terminations, waivers or rescissions of the contract must be pursuant to a written agreement duly executed by the parties hereto. The plaintiffs contend that this provision prohibits the defendants' assertion of a promissory estoppel claim. An oral statement made in the face of a written contract is not a promise or commitment for promissory estoppel purposes because the existence of a written contract demonstrates the parties' intention that it will govern their transaction. *Trent Partners & Associates, Inc. v. Digital Equipment Corp.*, 120 F. Supp. 2d 84, 104-105 (D. Mass. 1999), *citing, Rhode Island Hosp. Trust Nat'l Bank v. Vradian*, 419 Mass. 841, 850 (1995).

**Defendants' View on Issues of Law**

None now known specifically. Although defendants have not been shown copies of plaintiffs' proposed exhibits, defendants anticipate objections to the introduction into evidence of several of the documents apparently proposed.

417016

**(7)  REQUESTED AMENDMENTS TO THE PLEADINGS**

The plaintiffs seek to amend the complaint to add a count of defamation against Lamson, based on evidence obtained during discovery that Kurt Zanner, a Lamson employee and upper level manager, advised numerous third-parties that Dunn was terminated for theft.

**(8)  ADDITIONAL MATTERS TO AID IN DISPOSITION OF THE CASE**

N/A

**(9)  PROBABLE LENGTH OF JURY TRIAL**

The plaintiffs contend that the contract is clear and unambiguous and should be construed by the court as a matter of law. The plaintiffs also contend that the 93A counterclaim asserted by the defendants should be decided by the court. All other issues in this case are appropriate for jury determination. The jury trial will likely take four (4) days.

**(10)  WITNESSES**

**Plaintiffs' Witnesses**

The plaintiffs reserve their right to call any of the witnesses listed below by the defendants. In addition, the plaintiffs intend to call:

1.  David Dunn, 95 Chestnut Hill, Brattleboro, VT 05301.

2.  Wendy Brewer, 13 Guilford Street, Brattleboro, VT 05301, (802) 257-4522. On information and belief, this witness is expected to testify as to the assault, and as to the plaintiff's performance and responsibilities at L&G.

3.  Kim Curtis, 13 Railroad Road, Bernardston, MA 01337, (413) 648-9092. On information and belief, this witness is expected to testify as to the assault and as to the plaintiff's performance and responsibilities at L&G.

4.  Paul Coburn, 57 Warner Hill Road, Charlemont, MA 01339, (413) 339-5311. On information and belief, this witness has knowledge of the assault, has information regarding

417016

system and procedure changes made by the plaintiff after he became an employee of L&G, has information about how the plaintiff handled business affairs at L&G and has information regarding the bonuses paid at L&G.

5.  Tony Ostroski, 7 West Mountain Road, Bernardston, MA 01337.  On information and belief, this witness has information regarding the assault, has information regarding the commission figures on Tree Spirit sales that the plaintiff used to create his invoices, has knowledge of the computer systems and software L&G used to manage and operate its business and knowledge of the plaintiff's use of personal credit cards to purchase assets for L&G.

6.  Bruce Vogt, Prospect Street, Northampton, MA 01060, (413) 584-3071.  Ton information and belief, his witness is the owner of Vogt Insurance which worked closely with L&G on certain financial matters and has information regarding the stock grant proposal and other executive compensation discussions.

7.  Jack Laakso, Jack Laakso & Associates, CPA, Western Avenue, Brattleboro, VT 05301, (802) 254-2750.  On information and belief, this witness was Tree Spirit's accountant and plaintiff's personal accountant and has information about the sale of Tree Spirit as well as the stock grant proposal.

8.  Dan Kanner, CPA, 21 Hickory Ridge Road, Weston, CT 06883, (203) 227-8243.  On information and belief, this witness reviewed the stock grant proposal and has information regarding same.

9.  Vikki Dunn, 95 Chestnut Hill, Brattleboro, VT 05301, (802) 257-4428.  Vikki Dunn is the plaintiff's spouse and has knowledge about the stock grant proposal, has knowledge relating to a loan made by the plaintiff to L&G to meet payroll, has knowledge about the use of personal credit card to purchase assets for L&G and has knowledge of the plaintiff's emotional condition following the assault and termination.

417016

10. <u>Melissa Italia</u>, EAP Professional, Workplace and Family Health, 67 Main Street, Brattleboro, VT 05301, 802-254-5875. Ms. Italia provided counseling to the plaintiff after his termination and has information regarding the plaintiff's emotional condition as a consequence of his termination and assault.

The plaintiffs reserve their right to call additional witnesses in rebuttal.

**Defendants' Witnesses**

[Note: unless otherwise given, the address of each is Lamson and Goodnow, 15 Greenfield Street, Greenfield, MA 01301-1378]

1. <u>J. Ross Anderson, Jr.</u> Mr. Anderson is expected to testify regarding the purchase of assets of Spiritual Trees, Inc., the consultancy and employment of plaintiff Dunn, the circumstances of Mr. Dunn's termination, the performance or non-performance of contracts at issue, and other facts underlying all counterclaims and damages incurred.

2. <u>Susan Atherton</u>, P.O. Box 91, Buckland, MA. . Ms. Atherton is expected to testify regarding the processes and practices of L&G's bookkeeping systems, the entry or non-entry of payable items into that system, the authenticity and delivery or receipt of purported Spiritual Trees invoices, and communications with plaintiff Dunn.

3. <u>Peter J. Blackmore</u>, TD BankNorth, 215 Main Street, Brattleboro, VT. Mr. Blackmore is expected to testify regarding communications from Mr. Anderson on behalf of L&G regarding the purported obligation to pay commissions on the sale of certain products, and regarding representations made in L&G financial statements.

4. <u>Chief James Hicks</u>, Buckland Police Dept., Buckland, MA. Chief Hicks is expected to testify regarding reports of a March 29, 2004 incident involving plaintiff Dunn and L&G and certain of its employees.

5. <u>Brian Koshinsky</u>. Mr. Koshinsky is expected to testify regarding events of March 29, 2004 at L&G, and regarding the conversion by plaintiff Dunn of certain L&G funds.

417016

6.  <u>Karen Morse</u>.  Ms. Morse is expected to testify regarding the events of March 29, 2004 at L&G.

7.  <u>Anthony Ostroski</u>.  Mr. Ostroski is expected to testify regarding L&G's computer systems and processes, including to the absence of any entries of Spiritual Trees invoices to those systems, and to the events of March 29, 2004 at L&G.

8.  <u>David Perrico,</u> Azteck Consulting Group, 372 Mountain Street, Sharon, MA 02067.  Mr. Perrico is expected to testify as a computer forensics investigator if court authorizes review of certain of plaintiff Dunn's e-mail documents.

9.  <u>Cathy Roberts</u>, Bank of Western Mass., 45 Greenfield Street, Greenfield, MA.  Ms. Roberts is expected to testify regarding the processes and practices of L&G's bookkeeping systems, the entry or non-entry of payable items into that system, the authenticity and delivery or receipt of purported Spiritual Trees invoices, and communication with plaintiff Dunn.

10.  <u>Marcia Tetreault</u>.  Ms. Tetreault is expected to testify regarding L&G's computer bookkeeping systems and processes, including to the absence of any entries of Spiritual Trees invoices into those systems, and to the events of March 29, 2004 at L&G.

11.  <u>Barbara Wallace</u>, Bank of Western Mass., 45 Federal Street, Greenfield, MA.  Ms. Wallace is expected to testify regarding communications from Mr. Anderson on behalf of L&G regarding the purported obligation to pay commissions on the sale of certain products, and regarding representations made in L&G financial statements.

12.  <u>Nicoletta M. Welsh, CPA</u>, Welsh and Associates, 277 Main Street, Greenfield, MA.  Ms. Welsh is expected to testify regarding her understanding and knowledge regarding any obligation of L&G to pay Spiritual Trees commissions upon the sale of certain products and the basis thereof, regarding the contents of L&G financial statements, and regarding communications with plaintiff Dunn.

417016

13.     <u>Kurt Zanner</u>.  Mr. Zanner is expected to testify regarding the consultancy and employment of plaintiff Dunn, regarding communications with Dunn regarding the payment of commissions upon the sale of certain products, regarding the payment by L&G of bonuses, regarding plaintiffs' claim of a "stock grant proposal," and regarding the events of March 29, 2004 at L&G.

**(11)    PROPOSED TRIAL EXHIBITS, JURY INSTRUCTIONS, SPECIAL VERDICT FORM, AND SPECIAL INTERROGATORIES**

**The Plaintiffs Intend to Introduce the Following Exhibits:**

The plaintiffs reserve the right to introduce any of the exhibits on the defendants' list. The plaintiffs contend that the contract is clear and unambiguous and that parole evidence, including draft contracts, are not admissible.  To the extent that the court allows parole evidence, the plaintiffs would seek to introduce Exhibits 3 and 4 below.  In addition, they intend to introduce:

1.  Fully Executed Sales Contract Agreement between Spiritual Trees Inc. and Lamson and Goodnow Mfg. Co.
    February 1, 2000

2.  Fully Executed Sales Contract Agreement with all attachments produced as Exhibit 1 to Defendants' Responses to Plaintiffs' Request For Production of Documents.

3.  First Draft of Sales Contract Agreement between Spiritual Trees Inc. and Lamson and Goodnow Mfg. Co.
    January 28, 2000

4.  Second Draft of Sales Contract Agreement between Spiritual Trees Inc. and Lamson and Goodnow Mfg. Co.
    January 31, 2000

5.  Fully Executed Sale and Transfer Document by Spiritual Trees, Inc. to Lamson and Goodnow Mfg. Co. witnessed by Susan Atherton of goods and chattel, including but not limited to, all intellectual property.
    February 11, 2000

417016

6. Fully Executed Sale and Transfer Document by Dunn to Lamson and Goodnow Mfg. Co. witnessed by Susan Atherton of goods and chattel, including but not limited to, all intellectual property.
February 11, 2000

7. "Business Report" - Prepared by David Dunn for Lamson and Goodnow Mfg. Co.
March 2000

8. Commission Invoices Presented to Lamson and Goodnow
April 16, 2000 and May 9, 2000 and June 5, 2000

9. Spiritual Trees, Inc. d/b/a Tree Spirit Invoice to Lamson and Goodnow Mfg. Co.
February 22, 2000

10. Spiritual Trees, Inc. d/b/a Tree Spirit Invoice to Lamson and Goodnow Mfg. Co. for Inventory sold.
March 3, 2000

11. Spiritual Trees, Inc. Bill of Sale Document, Dated March 3, 2000.
March 2000

12. Tree Spirit Sales by Customer by Invoice by Product and Value Report From March 1, 2000 through February 28, 2002.
March 11, 2002

13. Tree Spirit Sales by Product Report From March 1, 2000 through February 28, 2002.
March 11, 2002

14. Tree Spirit Sales Summary by Customer Name Report From March 1, 2000 through February 28, 2002.
March 11, 2002

15. Tree Spirit Promotional Brochure and Product Catalog.
1999

16. Lamson and Goodnow Product Catalog.
2002

17. Checks and Audit Trail - David Dunn.
August 2002

18. Lamson and Goodnow Mfg. Web Site Description of Tree Spirit Products.
Unknown

19. Principal Financial Group Statement Dated May 14, 2004.
May 14, 2004

417016

20. Employee Manual – October 2000.

21. E-Mail from Dunn to Anderson dated 4/17/02 with attachments.

22. E-Mail from Dunn to Paul Coburn dated 2/19/03.

23. E-Mail from Dunn to Marcia Tetreault dated 7/1/03.

24. E-Mail from Dunn to Paul Coburn dated 9/10/03.

25. E-Mail from Dunn to Paul Coburn dated 1/6/04.

26. E-Mail from Dunn to Barbara Wallace dated 1/8/04 with attached Log Consolidated Financial Statement.

27. E-Mail from Barbara Wallace to Dunn dated 1/13/04.

28. E-Mail from Marcia Tetreault to Dunn dated 1/21/04.

29. E-Mail from Bruce Vogt to Dunn dated 2/15/04.

30. E-Mail string between Bruce Vogt and Dunn dated 3/19/04.

31. E-Mail string between Dunn and Barbara Wallace dated 3/23/04.

32. E-Mail between Dunn and Sheryl McQuade dated 3/26/04.

33. E-Mail from Peter Blackmore to Anderson dated 4/7/04.

34. Letter from Scott Foster to Dunn dated 4/6/04.

35. Lamson 2003 Flex Budget.

36. Treatment records of Melissa Italia.

37. Handwritten bonus calculation formula.

38. Lamson Tree Spirit products with identifying product tags/labels.

39. News Release of 2/3/00 announcing Lamson's acquisition of Tree Spirit assets.

40. Lamson Income Statement of July 2000.

41. Lamson Income Statement of July 2001.

42. Lamson Income Statement of July 2002.

417016

43.   Lamson General Journal Subledger Account 7280 Performance Incentives between April 2000 and March 2004.

44.   Lamson General Journal Subledger Account 7780 Performance Incentives between April 2000 and March 2004.

45.   Non-Union Pay Rates dated 6/14/04.

Plaintiffs reserve their right to offer additional exhibits at trial in their main case and in rebuttal.

**The Defendants Intend to Introduce the Following Exhibits:**

1.   Asset Purchase Agreement, as executed 2/1/00;

2.   Memorandum 1/25/00 from Anderson to Dunn, with notations;

3.   Tree Spirit Sale Proposal to Lamson & Goodnow, 1/26/00;

4.   Draft Asset Purchase Agreement 1/28/00, with notations;

5.   Draft Asset Purchase Agreement 1/31/00, with notations;

6.   "Tree Spirit" Commission Due Invoice 4/16/00;

7.   "Tree Spirit" Commission Due Invoice 5/09/00;

8.   "Tree Spirit" Commission Due Invoice 4/16/00, with notations;

9.   "Tree Spirit" Commission Due Invoice 5/9/00 with notations;

10.  "Tree Spirit" Commission Due Invoice 6/5/00, with (non-original) signature;

11.  Draft Deferred Compensation Agreement, dated June, 2002;

12.  Report titled Projects and Planning by David Dunn, March, 2000, with notations of J. Ross Anderson on cover;

13.  Notes by Nicoletta Welsh of 8/2/00 meeting with Ross Anderson, David Dunn and Sue Atherton;

14.  Page 2 of Asset Purchase Agreement, with notations of Nicoletta Welsh;

15.  Draft letter to Ross Anderson from David V. Dunn, dated March 22, 2004;

417016

16. String of e-mails between David Dunn and Vicki Dunn dated 3/22/04 regarding "March 22, 2004, letter reaffirming debt obligation";

17. Lamson and Goodnow Manufacturing Company's Financial Statements for Years Ended July 31, 2001 and 2000;

18. Lamson and Goodnow Manufacturing Company Financial Statements for Years Ended July 31, 2002 and 2001;

19. Lamson and Goodnow Manufacturing Company Financial Statements for Years Ended July 31, 2003 and 2002;

20. E-mail from David Dunn to Barbara Wallace and Ross Anderson dated 1/13/04, regarding "Statement with Regard to Lamson and Goodnow Financials";

21. E-mail from David Dunn to Ross Anderson dated 9/8/03 regarding "Notes to Financial 2003 Statements";

22. E-mail from David Dunn to Barbara Wallace, dated 10/10/03, regarding "Supplemental Lamson and Goodnow Information";

23. Demand for Payment, dated March 31, 2004 from David V. Dunn to Ross Anderson;

24. Two e-mails dated 7/10/00 regarding "Cash Flow Report W/O 7/10/00";

25. Collection of 4 e-mails to David Dunn 2000/2001;

26. Log of Folder Contents: "System Administrator";

27. Portion of Lamson and Goodnow ("L&G") Payables Table;

28. Portion of L&G Payables Currency Table (3855-3876);

29. Portion of L&G Payables Line Currency Table (3862-3884);

30. Portion of L&G Payables Currency Table (4157-4192);

31. Portion of L&G Payables Line Currency Table (4159-4186);

417016

32. N&B Express, Inc. invoice dated 4/24/00, and related documents;

33. Morris Transparent Box Co. invoice dated 10/29/99;

34. Digital video of L&G offices at Shelburne Falls;

35. Lechter's check to L&G in the amount of $557.16;

36. Buckland Police Department Incident Report dated 4/5/04 regarding Incident #04-70-OF

**11(A)  Jury Instructions**

The plaintiffs and defendants have exchanged proposed jury instructions. Defendants have served objections to plaintiffs' proposed instructions to which plaintiffs have not yet responded. The Plaintiffs' Proposed Jury Instructions, the Defendants' Proposed Jury Instructions and Defendants' Objections To Plaintiffs' Proposed Jury Instructions and Special Verdict Questions are attached as Exhibit A hereto.

**11(B)  Proposed Special Verdict Form and Special Interrogatories.**

The plaintiffs and defendants have exchanged proposed Special Verdict Questions. Defendants have served objections to the plaintiff's proposals, to which plaintiffs have not yet responded. The plaintiffs' and the defendants' Proposed Special Verdict Questions and Defendants' Objections To Plaintiffs' Proposed Jury Instructions and Special Verdict Questions are attached as Exhibit B hereto.

| | |
|---|---|
| THE PLAINTIFFS,<br>SPIRITUAL TREES D/B/A TREE SPIRIT<br>AND DAVID V. DUNN | THE DEFENDANTS,<br>LAMSON AND GOODNOW<br>MANUFACTURING COMPANY<br>and J. ROSS ANDERSON, JR. |
| By   /s/ *Patricia M. Rapinchuk*<br>Patricia M. Rapinchuk, Esq., of<br>Robinson Donovan, P.C.<br>1500 Main Street, Suite 1600<br>Springfield, MA 01115<br>Phone (413) 732-2301 Fax (413) 785-4658<br>BBO No.:  556149 | By   /s/ *Kevin C. Maynard*<br>Kevin C. Maynard, Esq., of<br>Bulkley, Richardson and Gelinas, LLP<br>1500 Main Street, Suite 2700<br>Springfield, MA 01115<br>Phone (413) 781-2820 Fax (413) 747-0770<br>BBO No.:  550669 |

417016