UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-30102-KPN

| | |
|---|---|
| SPIRITUAL TREES d/b/a TREE SPIRIT and DAVID V. DUNN, Plaintiffs | ) ) ) ) |
| vs. | ) ) |
| LAMSON AND GOODNOW MANUFACTURING COMPANY and J. ROSS ANDERSON, JR., Defendants | ) ) ) ) ) |

## PLAINTIFFS, SPIRITUAL TREES D/B/A TREE SPIRIT AND DAVID V. DUNN'S, PROPOSED JURY INSTRUCTIONS

### COUNT I - BREACH OF CONTRACT

Both the plaintiffs and the defendants, who have alleged counterclaims, allege breach of contract.

A contract is a promise, or set of promises, between two or more persons to do or not do a certain thing.

Ordinarily, for there to be a contract, the parties must by their words or conduct express their mutual assent-that is, their agreement-to exchange promises. For example, in a contract for the purchase and sale of a house, the buyer promises to pay a certain amount of money to the seller on a certain date, and the seller promises to deliver to the buyer on that date a deed to the seller's house. Each party has agreed to exchange a promise for a promise by the other party.

Sometimes, the agreement is to exchange one party's promise for the other's performing, or refraining from performing, a particular action. For example, a homeowner promises a neighbor $20 if he will mow her lawn, and he does so. They have agreed to exchange the homeowner's promise to pay for the neighbor's action of mowing the lawn.

415602

**a.    Formation and Mutual Assent**

The party alleging breach of contract must first prove that there is a binding contractual relationship between the parties.

Adapted from 3 Devitt, Blackmar & Wolff, *Federal Jury Practice Insturctions,* § 87.01 at 378 (4th ed. 1987).

A contract exists when the parties agree to terms and conditions of mutual promises. A contract may be based upon oral or written promises. This is often referred to as a "meeting of the minds." "Mutuality" means that the parties communicated their agreement to the terms and conditions in the same sense and at the time of the alleged contract. There is no contract formed if only one party intends to be bound, or if the parties intend to be bound only at a later time.

Agreement can be shown by written or spoken words, or by some act or omission which is intended to communicate agreement, and which indicates to the other party (or parties) that it is intended to communicate agreement. The law presumes that a person intends the natural and probable consequences of his acts. An unexpressed intent to be bound to a contract does not create a binding contract.

In order to determine whether a binding contract existed in this case, you must decide whether the parties intended to agree to the contract's terms as of the time of the contract.

*Canney v. New England Tel. & Tel. Co.,* 353 Mass. 158, 164, 228 N.E.2d 723, 727 (1967); *Guarino v. Zyfers*, 9 Mass.App.Ct. 874, 401 N.E.2d 857 (1980); *David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc.,* 8 Mass.App.Ct. 237, 241, 392 N.E.2d 1066, 1069–70 (1979); Restatement (Second) of Contracts §§ 1–5.

**b.    Formation**

In order to prove the existence of a contract with another, the party alleging the breach must prove each of the following three elements by a preponderance of the evidence:

1.    that an offer was made;

2.    that the offer was accepted; and

3.    that the plaintiff and the defendant each gave up something of value, or promised to give up something of value.  This is referred to under the law as "consideration."

*Quinn v. State Ethics Comm'n*, 401 Mass. 210, 216, 516 N.E.2d 124, 127 (1987); *David J. Tierney Jr., Inc. v. T. Wellington Carpets, Inc.,* 8 Mass.App.Ct. 237, 239–41, 392 N.E.2d 1066, 1068–69 (1979).

**c.    Offer and Acceptance**

The first two determinations you must make are whether anyone in this case made an offer, and if so, whether the other side accepted the offer. A contract requires both an offer and acceptance of the offer.

An offer is an expression of willingness or desire to enter into a contract made with the intent that if the other party accepts the offer, then there is a contract. The offer must state with reasonable certainty what is to be exchanged between the parties.

*Cygan v. Megathlin*, 326 Mass. 732, 733, 96 N.E.2d 702, 703 (1951); Restatement (Second) of Contracts § 33 (1979).

An offer may be made orally or in writing, or even by a person's conduct. What is important is that the offer be made in such a way as to justify another person in understanding that [his/her] acceptance of the bargain will bind both parties to the terms of the offer.

*Chicopee Concrete Serv. Inc. v. Hart Eng'g Co.*, 20 Mass.App.Ct. 315, 318, 479 N.E.2d 748, 749 (1985); *Gilbert & Bennett Mfg. Co. v. Westinghouse Elec. Corp.,* 445 F.Supp. 537, 545 (D.Mass. 1977). *See also Cataldo Ambulance Serv. Inc. v. Chelsea*, 426 Mass. 383, 386 n.6, 688 N.E.2d 959, 961 n.6 (1998).

Acceptance of an offer is an expression of willingness or desire to assent to the terms of the offer.

If the parties have not agreed on all material terms, then the parties are merely engaged in negotiation and they have not made a contract.

*Rosenfield v. United States Trust Co.*, 290 Mass. 210, 195 N.E.2d 323 (1935). *Cf. McCarthy v. Tobin*, 429 Mass. 84, 87, 706 N.E.2d 629, 631–32 (1999).

415602

### d.    Consideration

Consideration is something that is given in exchange for an offer.  To establish consideration, the plaintiff must prove a benefit to the maker of the promise, or a loss, trouble, or inconvenience to, or a charge or obligation resting upon, the party to whom the promise is made.

*Congregation Kadimah Toras-Moshe v. DeLeo,* 405 Mass. 365, 366, 540 N.E.2d 691, 692 (1989); *Loranger Constr. Corp. v. E.F. Hauserman Co.,* 376 Mass. 757, 763, 384 N.E.2d 176, 180 (1978); *Marine Contractors Co. v. Hurley,* 365 Mass. 280, 286, 310 N.E.2d 915, 919 (1974); *Cottage St. M.E. Church v. Kendall,* 121 Mass. (Lothrop) 528, 529-30 (1877).

A hope of a future benefit or a promise to contract in the future without any present agreement for that benefit is not valid consideration.

*Schwanbeck v. Federal-Mogul Corp.,* 412 Mass. 703, 706, 592 N.E.2d 1289, 1292 (1992) (noting that a promise made with an understood intention that it is not to be legally binding, but only expressive of a present intention, is not a contract); *Congregation Kadimah Toras-Moshe v. DeLeo,* 405 Mass. 365, 368, 540 N.E.2d 691, 693-94 (1989) (holding that an oral promise to donate money to a synagogue lacked consideration and was unenforceable); *Graphic Arts Finishers, Inc. v. Boston Redev. Auth.,* 357 Mass. 40, 42-43, 255 N.E.2d 793, 795–96 (1970) (stating that a promise that binds one to do nothing at all is illusory and cannot be consideration); *Rosenfield v. United States Trust Co.,* 290 Mass. 210, 216, 195 N.E.2d 323, 325 (1935).

A contract without either consideration or a valid substitute for consideration is unenforceable.

See subsections 14.1.9, Consideration Substitute: Detrimental Reliance (Promissory Estoppel), and 14.1.10, Consideration Substitute: Seal, below.

*Congregation Kadimah Toras-Moshe v. DeLeo,* 405 Mass. 365, 368, 540 N.E.2d 691, 693–94 (1989); *O'Connor v. National Metals Co.,* 317 Mass. 303, 306, 58 N.E.2d 153, 154–56 (1944); *Bliss v. Negus,* 8 Mass. 46, 51 (1811).  *See also Gill v. Richmond Co-Op Ass'n,* 309 Mass. 73, 34 N.E.2d 509 (1941); *Jurgens v. Abraham,* 616 F.Supp. 1381, 1387 (D.Mass. 1985) (applying Massachusetts law).

### e.    Terms of Contract

If you determine that a binding contract was formed, you must determine the terms of the contract.  The terms of the agreement are those terms to which the parties mutually assented with reasonable certainty.

*Kravetz v. Merchants Distrib., Inc.,* 387 Mass. 457, 460, 440 N.E.2d 1278, 1280 (1982); *Rosenfield v. United States Trust Co.,* 290 Mass. 210, 195 N.E.2d 323 (1935).

**f.      Modification**

The parties to a contract can agree to replace the contract with a new contract, or to modify the terms of the contract. However, one party cannot unilaterally change the terms of the contract. There must be an agreement to replace or modify the contract in the same manner as the original contract was formed.

*Simkins Indus., Inc. v. Jeppson*, 402 F.Supp. 1265 (D. Mass. 1975).

*Sargent v. Tenaska, Inc.*, 914 F.Supp. 722 (D..Mass. 1996).

415602

**g.      Parol Evidence.**

(1)      *Unambiguous Terms*

If the contract itself is clear and complete, other evidence, such as prior or contemporaneous oral discussions or negotiations, is not relevant.  In interpreting the provisions of a contract, you must construe and enforce unambiguous terms of the contract according to their plain meaning.

Parol evidence, that is, verbal or written evidence not contained in the written contract itself, is not permitted to supplement, contradict or vary the terms of the agreement where the terms of the contract are unambiguous.

*Mass. Mun. Wholesale Elec. Co. v. Town of Danvers,* 411 Mass. 39, 48, 577 N.E.2d 283, 289 (1991); *Chase Commercial Corp. v. Owen,* 32 Mass.App.Ct. 248, 588 N.E.2d 705 (1992); *Fairfield Clarendon Trust v. Dwek,* 970 F.2d 990 (1st Cir. 1992); *see also Suffolk Constr. Co. v. Lanco Scaffolding Co.,* 47 Mass.App.Ct. 726, 716 N.E.2d 130 (1999).

(2)   *Ambiguous Terms*

Sometimes the terms of a contract are ambiguous. A contract is considered ambiguous when its terms, or the words used, can reasonably support different interpretations.

You should consider the contract words used, the agreement as a whole, other documents relating to the transactions, what the parties said, and the surrounding facts and circumstances in order to determine what the ambiguous contract terms were intended to mean. This additional evidence is relevant to help you to ascertain the intent and expectations of the parties where the contract terms are ambiguous.

*Suffolk Constr. Co. v. Lanco Scaffolding Co.*, 47 Mass.App.Ct. 726, 716 N.E.2d 130 (1999); *see also Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers*, 411 Mass. 39, 577 N.E.2d 283 (1991); *Chase Commercial Corp. v. Owen*, 32 Mass.App.Ct. 248, 588 N.E.2d 705 (1992); *Fairfield Clarendon Trust v. Dwek*, 970 F.2d 990 (1st Cir. 1992).

If terms are ambiguous, then those terms are interpreted against the party who drafted them. This means that in the case of doubt as to the contract's meaning, the instrument is to be read against the interest of the party that drafted it.

*Canam Steel Corp. v. Bowdoin Constr. Corp.*, 34 Mass.App.Ct. 943, 613 N.E.2d 121 (1993); *Wood v. Roy Lapidus, Inc.*, 10 Mass.App.Ct. 761, 764, 413 N.E.2d 345, 347 (1980); *Rams v. Royal Caribbean Cruise Lines*, 17 F.3d 11 (1st Cir. 1994); *Boston Helicopter Charter Co. v. Agusta Aviation Corp.*, 767 F.Supp. 363 (D.Mass. 1991).

**h.     Breach of Contract**

A breach of contract is a failure to comply with one or more terms of the contract. In order to recover for breach of contract, the nonbreaching party must have completely performed his obligations. Where one party to a contract has failed to perform his obligations, then as a matter of law, the other party is thereafter excused from performing his contractual obligations.

In order to prevail on a breach of contract claim, a party must prove the following four elements by a preponderance of the evidence:

1.     that there is a contract,

2.     that the party performed its obligations under the contract (or is excused from performance),

3.     that the other party breached the contract, and

4.     that the nonbreaching party suffered damages as a result of the breach of contract.

415602

**i..    Full Performance**

To recover for a breach of contract, a plaintiff must establish his full and complete performance of all obligations under the contract.  However, a material breach of the contract by one party excuses further performance by the nonbreaching party.

*G.M. Abodeely Ins. Agency, Inc. v. Commerce Ins. Co.*, 41 Mass.App.Ct. 274, 669 N.E.2d 787 (1996); *Lease-It, Inc. v. Massachusetts Port Auth.*, 33 Mass.App.Ct. 391, 600 N.E.2d 599 (1992); *Amarin Plastics, Inc. v. Maryland Cup Corp.,* 946 F.2d 147 (1st Cir. 1991).

**j.    Damages**

If the defendant did breach the contract, you must then decide the amount of the plaintiff's damages, if any.  Before the plaintiff can recover damages under any theory of recovery, he must prove that the defendant's breach caused damages.

*Lease-It, Inc. v. Massachusetts Port Auth.,* 33 Mass.App.Ct. 391, 397 (1992).

Damages must be proved with a reasonable degree of certainty.  Thus, damages cannot be speculative.  Any damages that the plaintiff claims to have suffered, including any compensatory damages, must be computed by rational methods upon a firm factual basis.  Therefore, any damages sought must be proven and not left to speculation.

In order to recover damages, a party must establish that his damages are ascertainable by reference to some definite standard, either of market value, established experience, or direct inference from known circumstances.

However, a mathematical certainty in measuring damages is not a prerequisite for recovery.

*Rombola v. Cosindas,* 351 Mass. 382 (1966); *Lufkin's Real Estate, Inc. v. Aseph,* 349 Mass. 343, 346 (1965); *Snelling & Snelling of Mass., Inc. v. Wall,* 345 Mass. 634, 635–36 (1963); *Whitespot Constr. Corp. v. Jetspray Cooler, Inc.,* 344 Mass. 632, 635 (1962); *Bond Pharmacy, Inc. v. City of Cambridge,* 338 Mass. 488 (1959); *John Hetherington & Sons, Ltd. v. William Firth, Co.,* 210 Mass. 8, 21–22 (1911); *Novel Iron Works, Inc. v. Wexler Constr. Co.,* 26 Mass.App.Ct. 401, 412 (1988); *Gilmore v. Century Bank & Trust Co.,* 20 Mass.App.Ct. 49 (1985).

A person who has been damaged by the wrongful act of another is bound to exercise reasonable care and diligence to avoid loss and to minimize damages.  The plaintiff may not recover for losses that could have been prevented by reasonable efforts on his part.

*Burnham v. Mark IV Homes, Inc.,* 387 Mass. 575 (1982); Restatement (Second) of Contracts § 350(1) (1981).

## COUNT II - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The plaintiff has alleged that the defendant, J. Ross Anderson, terminated Dunn to deprive him of his earned bonus in violation of the implied covenant of good faith and fair dealing.

In Massachusetts, there is an implied covenant of good faith and fair dealing between the parties to a contract.

The implied covenant of good faith and fair dealing means that neither party may do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

If you find that the defendant has failed to act in good faith and has breached his implied covenant of good faith and fair dealing, the plaintiff may recover for any subsequent breach of contract by the defendant.

*Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471–74, 583 N.E.2d 806, 819–21 (1991) (citing *Drucher v. Roland Wm. Jutras Assocs.,* 370 Mass. 383, 385, 348 N.E.2d 763, 765 (1976)); *Warner Ins. Co. v. Comm'r of Ins.*, 406 Mass. 354, 362 n.9, 548 N.E.2d 188, 193 n.9 (1990); *Fortune v. Nat'l Cash Register Co.*, 373 Mass. 96, 105, 346 N.E.2d 1251, 1257–58 (1977); *Kerrigan v. Boston,* 361 Mass. 24, 33, 278 N.E.2d 387, 393–94 (1972); 37 J. Nolan, *Massachusetts Practice, Tort Law*, § 11 at 10 (1979).  See also Chapter 16, Consumer Protection Act-Chapter 93A.

## COUNT III - TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

**a.    In General**

The plaintiff, Tree Spirit, claims in this case that it had a contract with the defendant, Lamson and Goodnow ("L&G"), and that the defendant, J. Ross Anderson, President of L&G, improperly interfered with L&G's performance of its obligations under this contract.

In order to prevail on this claim of improper interference with a contractual relationship, the plaintiff must prove by a preponderance of the evidence that:

1.    the plaintiff, Dunn, had a binding contract with L&G;

2.    the defendant, Anderson, knew about the contract and intentionally induced or persuaded L&G not to perform its obligations under the contract;

3.    the defendant, Anderson's, interference with L&G's performance of its obligations under the contract, in addition to being intentional, was improper in motive or in means;

4.    the plaintiff was harmed by the defendant's actions.


*King v. Driscoll,* 418 Mass. 576, 587, 638 N.E.2d 488, 494–95 (1994); *S.C.,* 424 Mass. 1, 673 N.E.2d 859 (1996); *G.S. Enters., Inc. v. Falmouth Marine, Inc.,* 410 Mass. 262, 571 N.E.2d 1363 (1991); *United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 551 N.E.2d 20 (1990). *See also Chemewa County Gold, Inc. v. Wnuk,* 9 Mass.App.Ct. 506, 509, 402 N.E.2d 1069, 1072 (1980) ("[i]n its classic form, the tort . . . involves the undoing of a business arrangement bound by contract."). *See also Shea v. Emmanuel College,* 425 Mass. 761, 764, 682 N.E.2d 1348, 1357 (1997) (relying on *King v. Driscoll,* 418 Mass. 576, 587, 638 N.E.2d 488, 494–95 (1994), *S.C.,* 424 Mass. 1, 673 N.E.2d 859 (1996)).

**b.     Requirement of a Binding Contract**

In order for you to find for the plaintiff on its claim for intentional interference with contractual relations against the defendant, you must find that the plaintiff was a party to a valid contract with a third party in full force and effect at the time of the actions complained of, which contract was breached by the third party as a result of the defendant's conduct.

A contract is simply an agreement between two or more persons, called "parties," to do or not to do a certain thing for "consideration," or a thing of value. Mutual promises to do or not to do a certain thing in the future are sufficient consideration for each other.

A contract may be oral or in writing. It may also be express or implied. An "express contract" is one actually stated or written in words. An implied contractual term is one which is not expressly stated in the contract but which, from the sense of the agreement as a whole, appears to have been intended by the parties to be a part of their contract.

If all the basic elements required by law for there to be a contract are present, a contract is deemed to be valid and binding if it is not illegal, in restraint of trade, or otherwise opposed to public policy. A contract is considered to be in full force and effect if, at the time in question, the agreement was in effect between the parties and not terminated, expired, or otherwise rendered ineffective.

*Redgrave v. Boston Symphony Orchestra, Inc.*, 602 F.Supp. 1189 (D.Mass.), *aff'd in part, vacated in part*, 855 F.2d 888 (1st Cir. 1985), *cert. denied*, 488 U.S. 1043 (1986). *See also* 1988 *Business Torts Litigation: Model Jury Instructions*, A.B.A. Litig. Sec. Pub., at 7.

### c.     Requirement of Knowledge

To find for the plaintiff, you must also find that the defendant knew of the existence of the contract between the plaintiff and L&G.  For this purpose, the defendant need not have had actual knowledge of this specific contract or its precise terms.  The requirement of knowledge may be found if, from the facts and circumstances of which the defendant had knowledge, the defendant should have known of the existence of the contractual relationship between the plaintiff and L&G.

See *Keene Lumber Co. v. Leventhal,* 165 F.2d 815–21 (1st Cir. 1948).

**d.    Requirement of Intent**

A person's intent is his objective or purpose.

Under the law, an actor is presumed to have intended the consequences of his act if the actor either desired to cause those consequences or knew that the consequences were certain, or substantially certain, to result from his act.  In the present case, therefore, in determining whether the defendant intended to interfere with L&G's performance of the contractual obligation owed to the plaintiff, you should consider whether the defendant either desired to achieve that result or knew that such interference was certain, or substantially certain, to result from his actions.

It is well settled that an actor may be found to have intended a result even if he did not act for the purpose of bringing about the result, so long as the actor knew that the result was certain, or substantially certain, to follow from his actions.

Restatement (Second) of Torts § 8(a) (1979).

e.      **Improper Motive or Means**

In general, a business enterprise does not act improperly when it interferes with or disrupts a competitor's prospective business relationship so long as its purpose is, at least in part, to advance its own competitive interests, and the business enterprise has not engaged in conduct that is otherwise unlawful.   In the present case, you may find that defendant acted for an improper purpose in interfering with the plaintiff's prospective business relationship with L&G if you find that it acted solely out of spite or ill will against the plaintiff, or for some unlawful purpose, rather than for the purpose of lawfully competing with the plaintiff and promoting its own business interests.

See Doliner v. Brown, 21 Mass.App.Ct. 692, 489 N.E.2d 1036 (1986).   See also Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 592 N.E.2d 1289 (1992); Restatement (Second) of Torts § 768 (1979). King v. Driscoll, 418 Mass. 576, 587, 638 N.E.2d 488, 494–95 (1994); S.C., 424 Mass. 1, 673 N.E.2d 859 (1996); Boothby v. Texon, Inc., 414 Mass. 468, 487, 608 N.E.2d 1028, 1040 (1993); Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 476, 589 N.E.2d 1241, 1245–46 (1992); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816–17, 551 N.E.2d 20, 23–24 (1990); Conway v. Smerling, 37 Mass.App.Ct. 1, 7–8, 635 N.E.2d 268, 272–73 (1994); W. Oliver Tripp Co. v. Am. Hoechst Corp., 34 Mass.App.Ct. 744, 751, 616 N.E.2d 113, 124 (1993); Mullen v. Ludlow Hosp. Soc'y, 32 Mass.App.Ct. 968, 971, 592 N.E.2d 1342, 1345, further app. rev. denied, 413 Mass. 1103, 598 N.E.2d 1133 (1992); Sereni v. Star Sportswear Mfg. Corp., 24 Mass.App.Ct. 428, 432–33, 509 N.E.2d 1203, 1205–06, further appellate review denied, 400 Mass. 1107, 513 N.E.2d 1289 (1987); Walker v. Waltham Hous. Auth., 44 F.3d 1042 (1st Cir. 1995).   See also Alba v. Sampson, 44 Mass.App.Ct. 311, 315, 690 N.E.2d 1240, 1242 (1998).

f.      **Damages-Plaintiff's Lost Profits**

If you find for the plaintiff on its claim for tortious interference with a contractual relationship, you may award the plaintiff damages for the profits it has lost, if any, by reason of the defendant's conduct. You should be guided by the rule that the plaintiff is entitled to any profits which he would, with reasonable certainty, have enjoyed, were it not for the breach of its contract. In arriving at the amount of profits lost by the plaintiff, you are entitled to consider the plaintiff's past earnings in its business. You should also consider all the other evidence concerning general economic and competitive conditions that you may find to have a bearing on the issue of lost profits.

The plaintiff's lost profits are the revenues which the plaintiff would have received but for the defendant's conduct, reduced by the direct expenses which the plaintiff would have incurred to receive those revenues, but without any reductions for fixed overhead expenses.

The plaintiff is not required to prove its loss of profits with mathematical precision. An element of uncertainty is permitted in calculating damages. However, the plaintiff still must show the portion of its losses, at least in general terms, that were attributable to the defendant's misconduct.

In addition to lost profits, the plaintiff is entitled to recover any reasonable costs it incurred in an effort to mitigate or reduce its damages and to recover business it lost due to the defendant's wrongful conduct. As a result, you may consider the plaintiff's expenses in determining the amount of damages necessary to compensate plaintiff for its losses.


*Lowrie v. Castle,* 225 Mass. 37, 51, 113 N.E.2d 206, 210 (1916) (prospective profits may be recovered when their loss appears to have been the direct result of the wrong complained of).

*Augat, Inc. v. Aegis, Inc.,* 417 Mass. 484, 488, 631 N.E.2d 995, 997–98 (1994) (a plaintiff may recover damages for lost profits when proof is made with "sufficient certainty").

*Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.,* 14 Mass.App.Ct. 396, 426, 440 N.E.2d 29, 48, *further app. rev. denied,* 387 Mass. 1103, 441 N.E.2d 260 (1982).

*Ricky Smith Pontiac, Inc. v. Subaru of New England,* 14 Mass.App.Ct. 396, 426, 440 N.E.2d 29, 48, *further app. rev. denied,* 387 Mass. 1103, 441 N.E.2d 260 (1982). *See also Gilmore v. Century Bank & Trust Co.,* 20 Mass.App.Ct. 49, 55, 477 N.E.2d 1069, 1073 (1985); *Air Tech. Corp. v. Gen. Elec. Co.,* 347 Mass. 613, 627, 199 N.E.2d 538, 548–49 (1964).

Concerning recovery of expenses related to mitigation or recoupment, see *Liability for Procuring Breach of Contract,* 26 A.L.R.2d 1227, 1272 (1952).

415602

## COUNT III - ASSAULT AND BATTERY

### a. In General

An assault is an attempt to offer with force and violence to do injury to a person either from malice or wantonness. Battery requires that an unlawful touching is actually inflicted under such circumstances. In order to sustain burden of proof, the plaintiff must show by a preponderance of the evidence:

1.   That there was an overt act on the part of the individual defendant;

2.   That the plaintiff had a reasonable belief or fear that physical harm to himself would result from the individual defendant's act; and

3.   In the case of battery, that there was actually an intentional and unjustified use of force; and

4.   The plaintiff sustained damages.

See *Glover v. Callahan,* 299 Mass. 55 (1937). Also use *Jesionowski v. Beck,* 937 F. Supp. 95, 105 (D. Mass 1996); *Noel v. Town of Plymouth,* 895 F. Supp. 346, 354 (D. Mass. 1995); *Commonwealth v. McCan,* 277 Mass. 199, 203 (1931).

To sustain an allegation of assault, the plaintiff must show that there was an offer to do harm which was immediately accompanied by an ability of the individual defendant to do such harm.

See *Ross v. Michael,* 246 Mass. 126, 140 (1923).

While an assault is an attempt to do another some personal harm, it is not necessary that the plaintiff prove that the defendant actually touched the person. However, a battery requires proof that there was an intentional and unjustified use of force.

See *Lesaint v. Weston,* 301 Mass. 136 (1938).

415602

**b.    Damages**

If you find for the plaintiff on the assault and battery count, the plaintiff is entitled to recover for damages even if the plaintiff has not proved specific bodily injuries.

See *Gosselin v. Silver*, 301 Mass. 481 (1938).

The plaintiff is entitled to recover for any physical injury and suffereing as well as for his expenses and any loss of earning capacity.

*Smith v. Holcomb,* 99 Mass. 552 (1878).

The plaintiff is entitled to recover, as an element of damages in addition to physical injury, for humiliation, indignity and injury to his feelings which were caused as a result of the assault and battery.

*Id.*

415602

## COUNT V - FALSE IMPRISONMENT IN GENERAL

False imprisonment is the intentional and unlawful confinement of a person, directly or indirectly, of which the person confined is conscious or by which the person is harmed.

*Noel v. Town of Plymouth,* 895 F.Supp. 346, 354 (D.Mass. 1995); *see Sarvis v. Boston Safe Deposit and Trust,* 47 Mass.App.Ct. 86, 97-98, 711 N.E.2d 911, 919, *further app. rev. denied,* 430 Mass. 1106, 717 N.E.2d 1015 (1999).

415602

**a.       False Imprisonment - Elements**

The plaintiff has brought a claim alleging that the defendant is liable for false imprisonment. To prove false imprisonment, the plaintiff must prove the following elements by a fair preponderance of the evidence:

1.        that the defendant unlawfully confined the plaintiff, directly or indirectly;

2.        that the defendant intentionally confined the plaintiff; and

3.        that the plaintiff was either conscious of the confinement or harmed by the confinement.

Restatement (Second) Torts § 35, False Imprisonment. *See Noel v. Town of Plymouth,* 895 F.Supp. 346, 354 (D.Mass. 1995) ("The tort of false imprisonment consists in the (1) intentional and (2) unlawful (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement") (citing *Santiago v. Fenton,* 891 F.2d 373, 383 (1st Cir. 1989) and *Wax v. McGrath,* 255 Mass. 340, 342, 151 N.E. 317, 318 (1926)).

415602

**b.    Confinement**

The confinement need not be substantial; unlawful restraint of a person's freedom of movement is sufficient.

The plaintiff who relinquishes his right to move about freely as the only available alternative to relinquishment of another right, such as the right to an unsullied reputation, is restrained or imprisoned for the purpose of the tort of false imprisonment.

*Rogers v. Okin*, 478 F.Supp. 1342, 1383 (D.Mass. 1979), *aff'd in part, rev'd in part*, 634 F.2d 650 (1st Cir. 1980), *cert. granted*, 451 U.S. 906 (1981), *vacated and remanded sub nom. Mills v. Rogers*, 457 U.S. 291 (1982), *on remand, Rogers v. Okin*, 738 F.2d 1 (1st Cir. 1984).

*Foley v. Polaroid Corp.,* 400 Mass. 82, 91, 508 N.E.2d 72, 77 (1987).

**c.    Defense - Justified Confinement**

Confinement that is justified is not false imprisonment. The defendant has the burden of proving that the confinement was justified.

*Wax v. McGrath,* 255 Mass. 340, 342, 151 N.E. 317, 318 (1926).

To establish that the confinement was justified, the defendant must prove by a preponderance of the evidence that, under all of the circumstances, he acted as a reasonably cautious and prudent person and was justified in entertaining suspicions that the plaintiff had committed a crime.

*Wax v. McGrath,* 255 Mass. 340, 344, 151 N.E. 317, 319 (1926).

e.    **Damages**

In an action for false imprisonment, the defendant is liable for the damages that are the direct result of his wrongful conduct. Such damages include the value of time spent in confinement.

Such damages also include bodily suffering, if any, and injuries to the plaintiff's feelings occasioned by the wrongful act. The plaintiff may recover for his emotional distress, if any, including shame, humiliation, and mental anguish.

*Bilodeau v. Maffei,* 309 Mass. 237, 238, 34 N.E.2d 687, 688 (1941).

*Tyler v. Pomeroy*, 90 Mass. (8 Allen) 480, 505 (1864).

*Foley v. Polaroid Corp.*, 400 Mass. 82, 92-93, 508 N.E.2d 72, 78 (1987).

## COUNT VI - DEFAMATION

### a.     In General

The plaintiff has brought a suit against the defendant charging him with slander, which is a type of defamation.  Slander refers to spoken words that are defamatory.

*Draghetti v. Chmielewski,* 416 Mass. 808, 812 n.4, 626 N.E.2d 862, 866 (1994).

### b.     Elements - Defamation of a Private Person

In order to prevail on his claim for defamation, the plaintiff must prove to you by a preponderance of the evidence each of the following elements:

1.     The defendant, individually or through his agent, published a defamatory statement of and concerning the plaintiff;

   *New England Tractor Trailer Training of Conn., Inc. v. Globe Newspaper Co.*, 395 Mass. 471, 474-80, 480 N.E.2d 1005, 1007-11 (1985) (reasonableness test for whether defamatory words could be understood to refer to the plaintiff);

2.     The defendant or his agent

   (a)     knew that the statement was false and that it defamed the plaintiff; or

   (b)     acted in reckless disregard of these matters; or

   (c)     acted negligently in failing to ascertain whether the statement was true, false or defamatory before publishing it; and

   Restatement (Second) of Torts § 580B (1977); *Jones v. Taibbi*, 400 Mass. 786, 799-00, 512 N.E.2d 260, 269 (1987) (private person plaintiff need only prove negligence); *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 858, 330 N.E.2d 161, 167 (1975); Restatement (Second) of Agency, § 254 (1958); *Netherwood v. American Federation of State, County and Mun. Employees, Local 1725*, 53 Mass. App. Ct. 11, 22, 757 N.E.2d 257, 257 (2001).

3.     the plaintiff suffered actual injury or harm as a result of the publication in question.

**c.**     **Definition - "Publication"**

In order to find that the statements were published, you must find that they were communicated to someone other than the plaintiff.   There is no requirement that the statements be communicated to a large number of people. A person who republishes a defamatory statement is just as liable as if he had originally published it.

*Shafir v. Steele*, 431 Mass. 365, 372, 727 N.E.2d 1140, 1145-46 (2000) (a communication to the agent of the defamed is a publication sufficient to support a libel claim); *Jones v. Taibbi,* 400 Mass. 786, 792, 512 N.E.2d 260, 264 (1987); *Brauer v. Globe Newspaper Co.*, 351 Mass. 53, 56, 217 N.E.2d 736, 739 (1966).

**d.    Definition - "Defamatory"**

A statement is defamatory if it tends to hold the plaintiff up to scorn, hatred, ridicule, or contempt, in the mind of any considerable and respectable segment of the community.   In making this determination the statement must be interpreted in light of the circumstances in which it was made and the natural sense meaning that the statement generally conveys.

*Stone v. Essex County Newspapers, Inc.,* 367 Mass. 849, 853, 330 N.E.2d 161, 165 (1975); *Sharratt v. Housing Innovations, Inc.*, 365 Mass. 141, 145, 310 N.E.2d 343, 346 (1974); *Lynch v. Lyons*, 303 Mass. 116, 119, 20 N.E.2d 953, 955 (1939); *Tobin v. Boston Herald-Traveler Corp.*, 324 Mass. 478, 488, 87 N.E.2d 116, 121 (1949); *Lyman v. New England Newspaper Publ'g Co.*, 286 Mass. 258, 260, 190 N.E. 542, 543 (1934); *Dellorusso v. Monteiro*, 47 Mass.App.Ct. 475, 477–78, 714 N.E.2d 362, 364 (1999) ("statements about a person's vocational reputation . . . are particularly likely to be defamatory").

**e.**       **Definition – "Of and Concerning" the Plaintiff**

The plaintiff must show that the defendant's statements were of and concerning him.  The plaintiff need not be referred to by name in the statement, in order to prove that the statements were about him.  He may show that the statement was of and concerning him by proving either

1.       that the defendant intended his words to refer to the plaintiff and that they were so understood; or

2.       that the defendant's words could reasonably be interpreted to refer to the plaintiff and the defendant was at least negligent in publishing the words in a way which reasonably could have been interpreted to refer to the plaintiff.

*Eyal v. Helen Broad. Corp.,* 411 Mass. 426, 430, 583 N.E.2d 228, 230–31 (1991); *New England Tractor Trailer Training of Conn., Inc. v. Globe Newspaper Co.*, 395 Mass. 471, 479–80, 480 N.E.2d 1005, 1010 (1985); *Sharratt v. Housing Innovations, Inc.*, 365 Mass. 141, 145–46, 310 N.E.2d 343, 346–47 (1974).

415602

**f.      Negligent Publication**

The third element requires the plaintiff to prove by a preponderance of the evidence that the defamatory statement was published as a result of the defendant or his agent's failure to exercise the degree of care in ascertaining whether the information was true, false or defamatory that would be exercised by a reasonably prudent person in the same or similar circumstances.  Under this standard, the defendant is required to act reasonably in checking on the truth or falsity or the defamatory character of the statement before publishing it.  Customs and practices within the profession are relevant, although not controlling, in applying this negligence standard.

Factors for you to take into consideration in determining whether the defendant acted as a reasonably prudent person under the circumstances include

- the presence or absence of time constraints against verification; and

- the reliability of the source of the information.

*Jones v. Taibbi,* 400 Mass. 786, 799–800, 512 N.E.2d 260, 268–69 (1987); *Appleby v. Daily Hampshire Gazette*, 395 Mass. 32, 36–37, 478 N.E.2d 721, 724 (1985); *Schrottman v. Barnicle*, 386 Mass. 627, 641, 437 N.E.2d 205, 214 (1982).

415602

g.    **Damages**

1.    **Compensatory Damages**

If you have found that the plaintiff has proven each of the elements that I have given you, then you may award money damages.    The purpose of compensatory damages is to afford the equivalent in money for the actual loss caused by the wrong of another.    Thus, in order to obtain damages, the plaintiff must have proven to you by a preponderance of the evidence that he suffered actual injury as a result of the defendant's defamatory publication.    Actual injury includes not only out-of-pocket loss, but also impairment to the plaintiff's reputation and standing in the community, personal humiliation, shame and disgrace, and mental suffering.

You must consider what amount of money would be full, fair and reasonable based on all the evidence.    The amount of damages should be based on just and reasonable inferences, even though there may be an element of uncertainty in your determination.

*Shafir v. Steele*, 431 Mass. 365, 373, 727 N.E.2d 1140, 1145 (2000) (recovery for distress and anxiety over defamation are recoverable); *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 21-22, 679 N.E.2d 191, 206 (1997) (setting aside a $1 million verdict); *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 860–61, 330 N.E.2d 161, 169 (1975); *Rombola v. Cosindas*, 351 Mass. 382, 385, 220 N.E.2d 919, 922 (1966); *Agoos Leather Co., Inc. v. American & Foreign Ins. Co.*, 342 Mass. 603, 608, 174 N.E.2d 652, 655 (1962); *Daniels v. Celeste*, 303 Mass. 148, 150, 21 N.E.2d 1, 2 (1939); *Sullivan v. Old Colony St. Ry. Co.*, 197 Mass. 512, 516, 83 N.E. 1091, 1092 (1908); *Dexter's Hearthside Rest., Inc. v. Whitehall Co.*, 24 Mass.App.Ct. 217, 220, 508 N.E.2d 113, 116 (1987).

## 2.     Special Damages

If the plaintiff has proved to you by a preponderance of the evidence that he has also suffered specific losses having an economic value, he is entitled to recover for those additional special damages.  Special damages may include the loss of an existing advantage, such as wages from a job, employment benefits or business clients.  They may also include loss of a future advantage, such as inability to get a new job.  The plaintiff must prove that the defamatory publication was a substantial cause of these economic losses.

*Tosti v. Ayik,* 394 Mass. 482, 496-99, 476 N.E.2d 928, 938-40 (1985); *Sharratt v. Housing Innovations, Inc.*, 365 Mass. 141, 146-47, 310 N.E.2d 343, 347 (1974); *Muchnick v. Post Publ'g Co.*, 332 Mass. 304, 308, 125 N.E.2d 137, 140 (1955); *Bander v. Metropolitan Life Ins. Co.*, 313 Mass. 337, 346, 47 N.E.2d 595, 601 (1943); *Craig v. Proctor*, 229 Mass. 339, 342, 118 N.E. 647, 648 (1918); *Morasse v. Brochu*, 151 Mass. 567, 572-74, 25 N.E. 74, 76 (1890) (doctor's loss of patients willing to employ him constituted special damage).

<div style="margin-left:40%">

THE PLAINTIFFS
SPIRITUAL TREES d/b/a TREE SPIRIT
and DAVID V. DUNN


By _____
Patricia M. Rapinchuk, Esq., of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 785-4658
BBO No.:  556149

</div>

415602