UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 3:04-CV-30102-KPN
Pages 1-48

SPIRITUAL TREES d/b/a TREE
SPIRIT and DAVID V. DUNN

vs.

LAMSON AND GOODNOW MANUFACTURING
COMPANY and J. ROSS ANDERSON, JR.



---

CONTINUED DEPOSITION OF: DAVID DUNN

---

Taken before Joanne Coyle, Certified
Shorthand Reporter, Notary Public, pursuant
to the Federal Rules of Civil Procedure, at
the offices of Bulkley, Richardson and
Gelinas, LLP, 1500 Main Street, Springfield,
Massachusetts on OCTOBER 31, 2005,
commencing at 9:10 a.m.

Joanne Coyle
Certified Shorthand Reporter
License No. 106693

PERLIK and COYLE REPORTING
Certified Professional Reporters

1331 Main Street
Springfield, MA 01103
Tel. (413) 731-7931     Fax (413) 731-7451

1  these have some annotations, right?
2       A.   Yes.
3       Q.   Let's start with Exhibit 38.  Is that a
4  copy of Tree Spirit commission due invoice to
5  Lamson and Goodnow dated April 16, 2000?
6  (Indicating.)
7       A.   Yes.
8       Q.   It has a handwritten annotation.  Would
9  you read that for me, please?
10      A.   "Voucher ID 03869 4/28/00.
11      Q.   The last being the date, April 28th,
12 2000?
13      A.   Correct.
14      Q.   Whose handwriting sit?
15      A.   I believe it is mine.
16      Q.   Do you have the original document --
17 that is, a document with the original annotation?
18      A.   I believe that document is in Lamson's
19 files.
20      Q.   We'll get to why you believe that's the
21 case in a moment.  When was this annotation made?
22      A.   I do not know.
23      Q.   Was it made on or around the
24 twenty-eighth of April, 2000?

1    A.   I do not know. I do not know if that
2    was the date it was processed, the date that I
3    took the information -- or the date that I took
4    the information down.
5    Q.   You say took the information down?
6    A.   Yes.
7    Q.   What do you mean by that, took it down
8    from what?
9    A.   Recorded the voucher ID number.
10   Q.   Where did you get that information?
11   A.   I believe Sue Atherton.
12   Q.   Let me back up, then. When, in terms of
13   your submitting this invoice, did you get that
14   information from Sue Atherton?
15   A.   You'll have to repeat that question.
16   Q.   Sure; did you get that voucher number
17   from Sue Atherton? Let's start there.
18   A.   I've already answered that; yes.
19   Q.   Did you get it within minutes, hours,
20   days of having submitted to her the invoice?
21   A.   I do not know. I do not remember.
22   Q.   Was it more than months?
23   A.   I do not remember. I believe it was
24   before the June date.

```
 1        Q.    What's the June date you're referring
 2   to?
 3        A.    The June date where Anderson and I
 4   agreed on the stock.
 5        Q.    How did you receive the voucher number
 6   from Ms. Atherton when you did get it?  Verbally?
 7   By e-mail?  In writing?
 8        A.    It would be natural to assume that it
 9   was verbally.
10        Q.    Tell me a bit about the voucher ID
11   system that was in place in 2000.
12              How were voucher ID numbers assigned and
13   why?
14        A.    As I recall, every single invoice that
15   was processed in the system receives its own
16   unique identification number.
17        Q.    Okay.
18        A.    And I did not have access to the
19   computer systems at that time so I would have had
20   to have relied on someone else to give me that
21   information.
22        Q.    Once an ID number is assigned, can it be
23   assigned to any other invoice?
24        A.    I believe that it's a unique identifier.
```

1    Q.    Once the identifier has been assigned,
2  can it be unassigned?
3    A.    I do not know the answer to that.
4    Q.    Do you know whether these voucher ID
5  numbers were assigned sequentially, such that for
6  example the next invoice received by Lamson and
7  Goodnow after Exhibit 38 would be given the number
8  03870?
9    A.    From my experience; yes.
10   Q.    As far as you are aware of the system
11  and know the system that was in place in 2000,
12  what evidence would Lamson and Goodnow have of
13  this voucher number and to what invoice it was
14  assigned?
15          MS. RAPINCHUK:  Objection.
16          THE WITNESS:  I believe that in the
17  computer systems of Lamson and Goodnow there
18  resides a line item for this invoice number -- or
19  for this voucher ID that corresponds to this
20  invoice.
21          Whether that is still there or not, I
22  have no idea.
23   Q.    (BY MR. MAYNARD)  You said that you
24  believe the original of this document -- that is

1  the document with your original annotation -- lies
2  with Lamson and Goodnow?
3      A.  I need to correct myself.  I'm not sure
4  whether the original is there or not.
5      Q.  Do you know whether you have the
6  original?
7      A.  I have a copy that I wrote those numbers
8  on and I'm not sure if it's an original or a
9  photocopy.  I don't remember.
10     Q.  When I say original, I'm talking about
11 presumably a copy of the invoice but with your
12 original handwriting?
13     A.  I'm not sure whether it's original or
14 photocopy.  I forgot.
15     Q.  Did you ever give your original
16 handwritten one to anyone else?
17     A.  I don't remember.
18     Q.  Did you make that annotation sometime in
19 the year 2000?
20     A.  Without question, as I testified
21 previously, I believe I made it before June of
22 2000.
23     Q.  But beyond that, you don't know whether
24 you made that annotation on the day you learned of

```
 1    the voucher ID number, is that fair?
 2         A.   That's correct.
 3         Q.   Does the date 4/28/00, does that trigger
 4    any memory of what occurred, if anything, on that
 5    date?
 6         A.   No.
 7         Q.   You don't understand that to be, for
 8    example, the date the ID number was assigned?
 9         A.   I would be speculating to say yes to
10    that question.
11         Q.   And you don't know whether that's the
12    date on which you were given the voucher ID
13    number?
14         A.   That's correct.
15         Q.   And don't know whether that's the date
16    on which you in fact submitted the invoice?
17         A.   No; this information is available.  It's
18    in the computer system.
19              You're asking me questions that Lamson
20    and Goodnow should know.
21         Q.   So whatever is in the computer system
22    with respect to this voucher ID is the true state
23    of affairs?
24         A.   Yes -- as far as I know.
```

```
 1      Q.    Take a look at Exhibit 39. (Indicating.)
 2      A.    (Witness examining document.)
 3      Q.    Do you have any recollection of making
 4   this notation?
 5      A.    No.
 6      Q.    Are your answers the same with respect
 7   to this document in terms of the significance of
 8   the notation -- that is, it references a voucher
 9   ID number that you learned was assigned with
10   respect to this invoice?
11      A.    That's correct.
12      Q.    Did you learn that from Ms. Atherton?
13      A.    I believe so; yes.
14      Q.    Did you have any recollection of how you
15   learned it from her?
16      A.    I believe she would have given it to me
17   verbally.
18            It could have also included -- I'll
19   correct myself -- Kathy Roberts, who was also an
20   accounts payable clerk at the time.
21      Q.    This notation bears the voucher ID
22   number 04171, right?
23      A.    That is correct.
24      Q.    And bears the date of May 18th, 2000,
```

1  right?
2      A.   Yes.
3      Q.   Does that date reference jog any
4  recollection of any event on that date?
5      A.   No.
6      Q.   Again, you don't know whether that's the
7  date you learned of the ID number, whether that's
8  the date it was assigned, or whether that's the
9  date you submitted this invoice or anything else?
10     A.   No.
11     Q.   As you testified with respect to
12 Exhibit 38, it's your testimony that the Lamson
13 and Goodnow computer system would contain
14 information relating to voucher ID number 04171?
15     A.   The system should; yes.
16     Q.   Just to complete kind of the triumvirate
17 of invoices, let me have marked this as
18 Exhibit 40.
19              (Defendant's Deposition Exhibit
                 No. 40 offered and marked.)
20
21     Q.   (BY MR. MAYNARD)   Exhibit 40 is the
22 commission invoice due June 5th, 2000 which is
23 also part of Exhibit 18, but just to keep things
24 neat, I'll mark it as a separate exhibit as well.

```
 1     This one does not contain -- strike that.
 2            Did you ever learn of any voucher ID
 3     number being assigned to this invoice?
 4        A.   No.
 5        Q.   Did you ever ask that one be assigned?
 6        A.   That's a difficult question to answer.
 7     I would not have asked for a voucher number to be
 8     assigned.
 9            I would have given this to the accounts
10     payable person for processing and they would do
11     that as part of their normal function.
12        Q.   Is that what you did in this case?
13        A.   I believe I gave this invoice to Sue
14     Atherton; yes.
15        Q.   And that's what you had done with
16     Exhibits 38 and 39, right?
17        A.   I believe I either gave it to Sue
18     Atherton or Kathy Roberts or Ross Anderson.
19        Q.   And in each of those instances,
20     eventually you heard from Sue Atherton that there
21     was a voucher ID number assigned -- in the
22     instances of Exhibits 38 and 39?
23        A.   I'm not sure that's the chronology of
24     events.
```