**BR&G**
SPRINGFIELD   BOSTON

**BULKLEY, RICHARDSON AND GELINAS, LLP**

LAW OFFICES
1500 MAIN STREET, SUITE 2700
POST OFFICE BOX 15507
SPRINGFIELD, MA 01115-5507

TEL: (413) 781-2820
FAX: (413) 272-6804

KEVIN C. MAYNARD
DIRECT DIAL (413) 272-6244
KMAYNARD@BULKLEY.COM

December 1, 2005

**BY HAND DELIVERY**

Patricia M. Rapinchuk, Esq.
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
P.O. Box 15609
Springfield, MA 01115-5609

  Re: Spiritual Trees, d/b/a Tree Spirit and David V. Dunn
  vs. Lamson and Goodnow Manufacturing Company and J. Ross Anderson, Jr.
    Civil Action No. 04-30102-KPN

Dear Pat:

  I write in response to your letter dated November 9, 2005 after further investigating some of the matters you addressed in that letter. After that further investigation I am as convinced as before that your clients have attempted to manufacture evidence in the case.

  The "Master" payables data table of which Mr. Dunn speaks (evidencing his substantial familiarity with the relevant program by the way) is known simply as the Payables Table. There are four other data tables created from the data entered: Payables Distribution, Payables Lines, Payables Currency and Payable Lines Currency. Those four tables were enclosed in my prior correspondence. Enclosed is the portion of the Payables Table including Voucher ID numbers 2940 through 4343. The table includes data related to the headings across the top of the first page.

  As you see, the Voucher ID numbers your client says were assigned to the Tree Spirit invoices at issue, No. 03869 and No. 04171, are not included on the Payables Table, just as they were not included on the Distribution and Lines Tables previously provided. Those numbers **were** assigned to certain invoices, however, as indicated by their inclusion on the Payables Currency and Payables Line Currency tables previously provided. Further copies of those tables are enclosed.

  When invoices are entered into the system, a Voucher ID is created and relevant data is embedded in each of the available data tables. From the "Create Date" on the master Payables table relating to Voucher ID numbers coming before and after 03869 and 04171 ("Create Date" is not included on the Currency tables), one can see that Voucher ID number 03869 was assigned during the period 4/28/00 – 5/01/00, and 04171 was assigned on 5/12/00. A Voucher ID may be deleted

**BULKLEY, RICHARDSON AND GELINAS, LLP**

Patricia M. Rapinchuk, Esq.
December 1, 2005
Page 2

before the corresponding payable is posted to the general ledger. Such a deletion would be reflected in a removal of the relevant information from the Payables Table, and a resulting "gap" in Voucher ID numbers. Deletion from the Payables Table in 2000 did not delete all data, however, because versions of the program then in use did not delete data from the Currency or Currency List tables. (Note the absence of gaps in numbers on the currency tables.) The omission of the relevant Voucher ID numbers from the Payables Table and inclusion on the Currency and Currency Lines Tables indicates that the vouchers were assigned and then deleted from the system before they were posted to the general ledger. Contrary to a suggestion otherwise in your letter, Voucher ID numbers cannot be reused or reassigned once they are deleted. Thus, we can establish that the Voucher ID numbers identified by your client were assigned only to invoices other than those supposedly from Tree Spirit, given the amounts invoiced. As shown on the Currency tables, the amount actually invoiced by the invoice assigned voucher ID 03869 was $91.84. The amount invoiced by the invoices actually assigned Voucher ID 0417 was $908.08. The purported Tree Spirit invoices were for substantially larger sums.

Because the identity of the vendor is not among the data included on the Currency Tables, Lamson & Goodnow has not yet identified the vendors that issued the invoices to which Voucher ID numbers 03869 and 04171 were in fact assigned. My client is attempting to locate those invoices manually, however, and I will apprise you of the identity of the vendors if and when the invoices are located, and will provide copies of the invoices once discovered.

I was incorrect in my November 2, 2005 letter when I stated that Tree Spirit had never been entered as a vendor in the system. As you correctly note, it was. (See, e.g., Voucher ID No. 3561 on the enclosed Payables Table.) However, Spiritual Trees, Inc. was **not** entered as a vendor. Moreover, Spiritual Trees, Inc. was never identified in the system as a payee under the vendor status of Tree Spirit, notwithstanding that the purported Tree Spirit invoices instruct that payment be made to Spiritual Trees, Inc.

A search of all Payables data entered in the period February 1 – June 1, 2000 indicate that no invoice was ever entered in an amount matching the amount on any of the purported Tree Spirit invoices.

Simply put, the purported Tree Spirit invoices were never entered into the system. The Voucher ID numbers identified by Mr. Dunn as having been assigned to those invoices (and written in his hand on copies of those invoices produced suspiciously late in the litigation) were in fact assigned to other unrelated invoices, and could not have been reassigned or reused.

Regarding the reported recollections of Ms. Atherton and Ms. Roberts, we are comfortable letting a trier of fact decide any issues of credibility. To be clear, my understanding is that this is not a case where each of Ms. Atherton and Ms. Roberts fails to recall whether or not she informed

BULKLEY, RICHARDSON AND GELINAS, LLP

Patricia M. Rapinchuk, Esq.
December 1, 2005
Page 3

Mr. Dunn of the Voucher ID numbers he says were assigned, as he testified one of them did. Rather, each affirmatively recalls that she did not do so, and never saw the purported invoices. Further, I understand that Ms. Atherton clearly recalls that she did not sign the third purported invoice, as Mr. Dunn says she did.

We continue to assess whether or not to press our request for an examination of Mr. Dunn's electronic version of the April 17, 2002 e-mail and its attachments. I understood the response in your November 9 letter to be a denial of that request. Please correct me if I read it wrongly.

We will not produce Mr. Ostroski or any other person to be deposed regarding Lamson & Goodnow's computer system. Your client has been in possession of the purported invoices with the purported Voucher ID numbers noted for as long as they have existed. You had every opportunity before the discovery deadline in the case to depose a Lamson & Goodnow representative regarding the system by which such numbers were assigned, maintained, reported, etc. You cannot credibly argue, as you state in your November 9 letter, that you and your clients "never anticipated that Lamson would deny that the invoices were entered into the system…" Mr. Anderson testified in deposition on June 10, 2005, as follows:

> Q:   And it's your testimony that they [the invoices] were never entered into your accounting system?
> A.   That's correct.

(Transcript, 110: 13-15).

Finally, be assured we do not take lightly a suggestion that your clients have manufactured evidence. We fully appreciate the seriousness of the suggestion. Please note that we intend to prove the matter and to seek all appropriate remedies, including a recovery of attorneys' fees and other possible sanctions, upon the conclusion of this case.

Very truly yours,

Kevin C. Maynard

KCM/cmc
Encls.

cc:   Scott Foster, Esq. (w/o encls.)
      Ross Anderson (w/o encls.)