UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SPIRITUAL TREES d/b/a TREE )
SPIRIT and DAVID V. DUNN, )
         Plaintiffs )
          )
      v. )   Civil Action No. 04-30102-KPN
          )
          )
LAMSON AND GOODNOW )
MANUFACTURING COMPANY and )
J. ROSS ANDERSON, JR., )
         Defendants )

MEMORANDUM AND ORDER WITH REGARD TO
DEFENDANTS' MOTION TO AMEND JUDGMENT (Document No. 49)
March 23, 2006

NEIMAN, C.M.J.

Lamson and Goodnow Manufacturing Company ("Lamson") and J. Ross Anderson, Jr. ("Anderson") (together "Defendants") seek to amend the February 3, 2006 judgment in favor of Spiritual Trees d/b/a Tree Spirit, Inc. ("Spiritual Trees") and David V. Dunn ("Dunn") (together "Plaintiffs"). In particular, Defendants seek to have the clerk recalculate the prejudgment interest applied to that part of the jury's verdict which awarded contract damages of $161,478.64 to Spiritual Trees. Defendants do not challenge the interest applied to the $30,330 verdict Dunn obtained against Anderson for assault and battery. For the reasons which follow, the court will allow Defendants' motion.

I. BACKGROUND

On February 1, 2006, the jury rendered a verdict for Spiritual Trees and awarded

$161,478.64 against Lamson for the breach of their contract dated February 1, 2000. There is no dispute that this amount constituted "commissions" of $87,097.16 plus "late fees" of $74,381.48 as provided by the contract at one and one-half percent per month from June 30, 2000, when commissions were first payable, through January 23, 2006, when the trial began. As it turned out, the jury's award was precisely the amount calculated and sought by Plaintiffs. (See Plaintiffs' Exhibit 22.)

To the total of $161,478.64, the clerk's office -- in the Judgment entered February 3, 2006 -- applied the twelve percent statutory rate of prejudgment interest set out in Mass. Gen. L. ch. 231, § 6C ("section 6C"), retroactive to the date suit was filed, May 14, 2004. On March 10, 2006, the court heard oral argument on Defendants' motion to amend judgment as well as on Defendants' motion for a new trial. (By separate order issued this day, the court has denied Defendants' motion for a new trial.) On March 14, 2006, the parties reported that they agreed to reduce the contractual damages award by $425. ( See Document No. 61.)

## II. DISCUSSION

Defendants argue that the "late fees" provided for in the contract constitute the equivalent of interest accrued on the unpaid commissions. By applying the twelve percent prejudgment interest rate to such damages, Defendants assert, the court has awarded interest upon interest, resulting in the application of an usurious annual rate of over thirty percent. This goes well beyond the purpose of prejudgment interest, Defendants argue, namely, "'to compensate a damaged party for the loss of use or

wrongful detention of money." *Cahill v. TIG Premier Ins. Co.*, 47 F. Supp. 2d 87, 90 (D. Mass. 1999) (quoting *Conway v. Electro Switch Corp.*, 523 N.E.2d 255, 258 (Mass. 1988)). The only period for which Plaintiffs have not already been fully compensated via late fees, Defendants concede, is the eleven-day period from January 24, 2006, to February 3, 2006, when final judgment entered (and for any ensuing period should the court amend the judgment as requested).

For their part, Plaintiffs argue that the late fees were part of the consideration for the contract, enabling Lamson, if it required or wished, to have additional time to pay commissions. In other words, Plaintiffs assert, the late fees were contemplated as a way to provide flexibility to Lamson and still compensate Spiritual Trees for deferred commission payments. Not insignificantly, Plaintiffs continue, the contract, which was drafted by Defendants' counsel, did not describe the late fees as "interest" to be paid in substitution of the statutory rate for prejudgment interest. Therefore, Plaintiffs conclude, section 6C mandates that prejudgment interest of twelve percent per annum be applied to the full award.

Unfortunately, the cases cited by the parties in support of their respective positions are not directly on point. For example, the court in *Union Mut. Life Ins. Co. v. Chrysler Corp.*, 793 F.2d 1 (1st Cir. 1986), upon which Defendants in particular rely, expressed concerns about a "double payment," but did so when comparing the twelve percent statutory interest rate with a ten and one-half percent "interest" rate set forth in the contract. *Id.* at 17-18. The court did not address the type of "double payment"

which Defendants say occurred here, *i.e.*, statutory "interest" on top of contractual "late fees." Still, the court believes that Defendants have the better argument.

The Massachusetts contractual prejudgment interest statute provides, in pertinent part, as follows:

> In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve percent per annum from the date of the breach or demand. If the date of the breach of demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve percent per annum from the date of the commencement of the action.

Mass. Gen. L. ch. 231, § 6C. The statute, however, is not as "straightforward" or "mechanical" as may appear. *Interstate Brands Corp. v. Lily Transp. Corp.*, 256 F. Supp. 2d 58, 62 (D. Mass. 2003). Although "there is value in having a fixed rule for mathematically calculable interest to avoid the costs and delays incident to disputes over details," *Charles D. Bonanno Linen Service, Inc. v. McCarthy*, 550 F. Supp. 231, 246-47 (D. Mass. 1982), *aff'd*, 708 F.2d 1 (1st Cir. 1983), that is not section 6C's "sole or primary purpose," *Sterilite Corp. v. Continental Cas. Co.*, 494 N.E.2d 1008, 1010 (Mass. 1986). Rather, the Supreme Judicial Court (SJC") stated, the primary purpose of section 6C "is the same as the common law rule before," namely, "to compensate a damaged party for the loss of use or unlawful detention of money." *Id.* at 1011 (citation and internal quotation marks omitted). "An award of interest is made," the SJC explained, "so that a person wrongfully deprived of the use of money should be made

whole for his loss." *Id.* (citation and internal quotation marks omitted). "The common law," the SJC continued, "was particularly sensitive to the possibility that a liberal award of prejudgment interest could result in a windfall for plaintiffs amounting, in essence, to an award of punitive damages." *Id*. (footnote and citations omitted).

To be sure, the SJC was concerned with the distinction between liquidated and unliquidated damages. *See id.* But the principles enunciated in *Sterilite* nonetheless provide significant guidance to the case at hand. The "late fees" provision of the parties' contract -- *i.e.*, "one and one-half percent (1.50%) per month with respect to any Commissions not paid by its [sic] due date" (Plaintiffs' Exhibit No. 6) -- certainly has the feel of interest. Moreover, at approximately eighteen percent per year, the late fees clearly compensate Spiritual Trees for its inability to use the commissions while they remained unpaid. To pay twelve percent per year on top of that, in the court's estimation, would give Spiritual Trees a windfall and would inappropriately border on punitive damages. *See also Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co.*, 229 F. Supp. 2d 284, 289 (S.D.N.Y. 2002) (disallowing late fees as duplication of prejudgment interest); *In re 1095 Commonwealth Ave. Corp.*, 204 B.R. 284, 305 (Bankr. D. Mass. 1997) (precluding recovery of late fees because they would duplicate recovery provided by default interest rate).[1]

---

[1] For an edifying discussion of "late fees" as "interest," see *Greenwood Trust Co. v. Massachusetts,* 971 F.2d 818 (1st Cir. 1992). There, the First Circuit held that federal law preempted a state law which banned the imposition of late charges (in the form of a ten dollar flat fee) as a law regulating "interest" within the purview of the Depository Institutions Deregulation and Monetary Control Act of 1980, Pub. L. No. 96-

The *Sterlite* principles, it should be noted, were applied by District Judge Nancy Gertner in *Interstate Brands* in a manner similar to that sought here by Defendants. Judge Gertner concluded that the victorious plaintiff-in-counterclaim was not entitled to prejudgment interest on an award of lost contractual profits. *Interstate Brands*, 256 F. Supp. 2d at 61. According to the court, the jury had awarded the present value of the lost profits, a figure that would make the plaintiff-in-counterclaim "whole as of the date of the verdict." *Id*. at 62. "Awarding prejudgment interest on this element of the verdict," the court concluded, would give the plaintiff-in-counterclaim "a double recovery windfall, which would be an inappropriate result under the statute." *Id.* at 62-63 (citation omitted). In essence, "the jury's award was already adjusted to reflect the 'time value' of money, otherwise known as interest." *Id*. at 62. (footnote omitted).

The same can be said here as well. As in *Interstate Brands*, one can readily infer that the jury intended to make Plaintiffs whole by awarding commissions and late fees back to June of 2000 rather than April of 2004 when Dunn was fired.[2] *Compare Cahill*, 47 F. Supp. 2d at 90 (where there was "no way to determine [what] the jury intended"). In short, the jury effectively made Plaintiffs whole in the same fashion as

---

221, 94 Stat. 132 (1980). *Id*. at 830. The court saw "no reason to define either the term 'interest' or the term 'interest rates,' for purposes of the [federal law], in a manner that excludes late fees." *Id*. at 830-31.

[2] The jury reached its verdict after first inquiring whether it could "modify the commissions to begin accruing late fees beginning April, 2004 . . . [w]ith respect to Mr. Dunn's voluntary deferral of late fees." As described, Plaintiffs' calculation of late fees, as set forth in Plaintiffs' Exhibit 22, commenced June 30, 2000, when the first set of commissions were due. April of 2004 was the month Dunn was fired.

prejudgment interest pursuant to section 6C is intended to do.

### III. CONCLUSION

For the reasons stated, Defendants' motion to amend the judgment is

ALLOWED.  Accordingly, the clerk shall forthwith do the following:

> (a) calculate interest at twelve percent per annum on the $30,330 assault and battery award from May 14, 2004, to the date of the amended judgment; and

> (b) calculate interest at twelve percent per annum on contractual damages of $161,053.64 (a figure which reflects the parties' agreement to reduce those damages by $425) from January 24, 2006, to the date of the amended judgment.

The interest as recalculated shall be added to the total award of $191,383.64.

IT IS SO ORDERED.

DATED: March 23, 2006

                                                                          /s/ Kenneth P. Neiman
                                                                    KENNETH P. NEIMAN
                                                                    Chief Magistrate Judge